227 So.2d 809

Leander **LLOYD**

v.

**STATE.**

**6 Div. 64.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1969.

David P. Rogers, Jr., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

CATES, Judge.

This is an appeal from a conviction of murder in the second degree; sentence 75 years in the penitentiary.

I

The tendencies of the state's evidence were that the defendant participated with others in the killing of one Reginald Hawthorne by stabbing him with a knife. The only eye witnesses who could identify the defendant were accomplices.

The prosecution, presumably in order to overcome the strictures of Code 1940, T. 15, § 307, proved an in-custody confession to overcome the need for corroboration.

II

The only question which arises out of this record comes from the form of the so-called Miranda warnings [1] given before the de-

fendant made his inculpatory statement. We extract the pertinent questions from the testimony of Detective Frank T. Horn on voir dire with the jury withdrawn:

"Before the defendant made a statement, did you all tell the defendant he had a constitutional right to remain silent and he didn't have to say anything at all before he made the statement?

\*   \*   \*   \*   \*   \*

"Did you, or Detective Wallace, or anybody else in your presence, tell the defendant at that time and on that occasion, before he made a statement, that anything he said would be used against him in a court of law?

\*   \*   \*   \*   \*   \*

"Did Detective Wallace, in your presence, advise the defendant he had a right to have his lawyer present before he made any statement or answered any questions?

\*   \*   \*   \*   \*   \*

"Did you, or anybody else in your presence, tell the defendant at that time, before he made a statement, that if he couldn't afford a lawyer the Court would appoint him a lawyer *and to wait until that time before he answered any questions?*

\*   \*   \*   \*   \*   \*

"Did you, or Detective Wallace, or anyone else in your presence, or to your knowledge, promise the defendant anything if he made a statement?

\*   \*   \*   \*   \*   \*

"Did you, or Detective Wallace, or anybody else in your presence, or to your knowledge, offer the defendant any inducement whatever to make a statement?

\*   \*   \*   \*   \*   \*

"At that time and on that occasion, did you, or Detective Wallace, or anybody else in your presence or hearing, or to your knowledge, threaten the defendant or coerce him in order to get him to make a statement?

\*   \*   \*   \*   \*   \*

"Did you, or anybody else in your presence, or to your knowledge, tell the defendant it would be better for him or worse for him in any way if he did or did not make a statement?

\*   \*   \*   \*   \*   \*

"After you advised the defendant of his constitutional rights, did he then talk to you?" (Italics supplied)

Then the transcript of testimony shows the following:

"THE COURT: Let's find out about one thing. I don't believe you asked him what his reply was, did you?

"MR. WILKINSON: No, sir. What did the defendant say when you told him those things, that he had a right to remain silent and could have a lawyer appointed for him if he wanted one *before* he answered any questions?

"THE WITNESS: He was asked if he understood these points, and he replied in the affirmative, that he did understand the points that were explained to him.

"MR. WILKINSON: What did he say?

"THE WITNESS: He said he would.

"THE COURT: I believe you said he said he didn't want a lawyer and didn't want one appointed?

"THE WITNESS: He said he understood the points as had been explained and he wanted to make a statement.

"THE COURT: That he wanted to make a statement?

"THE WITNESS: Yes, sir.

"THE COURT: All right. Did he then proceed to make a statement to you?

"THE WITNESS: Yes, sir, he did.

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

"THE COURT: Lou, I don't know whether there will be anything involved in the statement that we need to exclude the jury again. Do you want to ask him anything on voir dire?

"MR. STEVENSON: Did you make a tape recording of the conversation?

"THE WITNESS: No, sir.

"MR. STEVENSON: Did you have a stenographer to take it down?

"THE WITNESS: Yes, sir.

"MR. STEVENSON: In what capacity is she employed in the City now?

"THE WITNESS: She is a stenographer with the City of Birmingham Police Department.

"MR. STEVENSON: Is she a trained legal stenographer, to take down testimony?

"THE WITNESS: I don't know.

"MR. STEVENSON: Did he read the statement of what he said, or was it typed?

"THE WITNESS: It was typed. I don't know if he read it, or not.

"MR. STEVENSON: Did he sign the statement?

"THE WITNESS: No, sir.

"MR. STEVENSON: Was he shown the statement after it was typed?

"THE WITNESS: I don't know.

"MR. STEVENSON: Did she take it down in shorthand, and was it typed up later?

"THE WITNESS: It was typed up later.

"MR. STEVENSON: It wasn't typed there for him, was it?

"THE WITNESS: No, sir.

"MR. STEVENSON: Do you know whether he read the statement, or not?

"THE WITNESS: No, sir.

"THE COURT: You don't know what happened about the shorthand notes, or whether or not it was transcribed, or not?

"THE WITNESS: I do know it was typed up.

"THE COURT: You don't know if it was brought back to him, or not?

"THE WITNESS: No, sir." (Italics supplied)

In his brief, counsel for appellant contends that the instant record fails to show an effective affirmative waiver of the so-called Miranda rights. In particular, it is argued that answers of Detective Horn to the question quoted above, viz. "he said he understood the points as had been explained and he wanted to make a statement," are insufficient.

The brief says:

"This statement standing alone shows that the defendant *did not* affirmatively say that he did not wish to consult with a lawyer. Because of this, his constitutional rights were not effectively waived as required under the later decisions of Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] and Sullins v. U. S. [10 Cir.], 389 F.2d 985. In light of the rules propounded by these cases it would seem that the defendant did not affirmatively, voluntarily, knowingly and intelligently waive his right to remain silent and his right to consult with counsel prior to the time he made the oral statement."

We have italicized above the questions which related to the lack of need of an in-custody defendant to answer any questions until he has consulted with a lawyer. We have set out, in some detail, the trial judge's question which went to the heart of the need, i. e., whether or not the defendant made an affirmative waiver after stating that he understood his rights.

■ We believe that the foregoing quoted matter, prima facie, shows a waiver made after an explanation capable of being understood by a reasonable man.

■ Under Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, it was open to the defendant to take the witness stand on voir dire to go into the details of the circumstances in which the State claims he made his voluntary confession.

The defendant did not do this—rather, after the State rested, he took the stand in his own behalf and went into full details of the alleged murder. The gist of his story was that he was along with the others but that he attempted to restrain them rather than to aid them.

Nowhere did he say anything about his statement to the police officers.

We conclude, not only were the warnings adequate, but also that the State established that there was an intelligent and knowing waiver of the rights.

In this connection, we have carefully reviewed the instant form of waiver with that which lead to reversal in Square v. State, 283 Ala. 548, 219 So.2d 377. There we find:

"Defendant says the so-called warning is defective in that defendant is not advised that the state will provide a lawyer to represent and advise defendant and to be present at and prior to the questioning if defendant desires a lawyer at that time. "Defendant's point is well taken. The warning read to defendant not only does not say to defendant that the state will provide a lawyer for him prior to any questioning but does state:

"'* * * We have no way of giving you a lawyer, but one will be appointed for you, if you wish, *if and when you go to Court* * * *' (Emphasis Supplied)

"The italicized clause suggests that a lawyer will be provided only if defendant goes to court and negates the idea that a lawyer will be appointed 'prior to any questioning.'"

It is to be noted that the fourth listed "right" given in the below quoted "FBI, Your Rights," taken from Gordon v. State, Miss., 222 So.2d 141, differs from that used in Alabama:

"* * * The FBI agent testified that before she was asked any questions he warned the appellant of her constitutional rights by reading from the FBI form entitled 'Your Rights', which is set out as follows:

"YOUR RIGHTS

"Place,

Time,

Date

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court:

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Thus, since Congress has refused to lift the burden of Miranda from State officers, and since our Legislature, except under Code 1940, T. 15, § 260–266, has seen fit not to supply counsel to paupers until after in-

dictment or other formal charge, Code 1940, T. 15, § 318 (capital cases); Act 526, September 16, 1963 (serious offenses), court appointment of counsel cannot be made until the prisoner is legally held to answer a charge "in the circuit court, or court of like jurisdiction." Code 1940, T. 15, § 318(1). Contrariwise, United States' Commissioners before whom federal prisoners must be taken have fuller powers.

█ The statement "that he had a right to wait until *that time* before * * * mak[ing] any statement" (italics & bracketed matter added), is not precise as to the timetable as to when the prosecution must see that the prisoner has a lawyer. Yet it is an admonition that the prisoner has the choice.

█ Two points must be borne in mind: One, the warning must be complete and accurate, *Square*, supra; and two, the prisoner must expressly and affirmatively show his waiver. No set pattern for manner of waiving the rights is prescribed. So in Anderson v. State, 6 Md.App. 688, 253 A.2d 387, we find:

"A valid waiver, however, 'will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained,' *Miranda* at page 475, 86 S.Ct. at p. 1628, * * * and in no event can the failure of the accused to ask for a lawyer constitute a waiver, *Miranda* at page 470, 86 S.Ct. 1602, * * *. But, as pointed out in United States v. Hayes, 385 F.2d 375 (4th Cir.), an express statement by an accused undergoing custodial interrogation that he understood his *Miranda* rights and nevertheless wanted to make a statement is not an essential link in the chain of proof of waiver. And the proper inquiry is not whether the accused made an intelligent decision in the sense that it was wise or smart to admit his participation in the crime, but whether his decision was made with the full understanding that he need say nothing at all and that he might then consult with a lawyer if he so desired. United States v. Hall, 396 F.2d 841 (4th Cir.). In People v. Johnson, 75 Cal. Rptr. 401, 450 P.2d 865, the Supreme Court of California held that 'Once the defendant has been informed of his rights and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them.' In Brown v. State, 3 Md.App. 313, 239 A.2d 761, we held that despite the fact that the evidence does not show an express waiver of the accused's right to remain silent and to consult with and/or have counsel present during the interrogation, nevertheless a valid constitutional waiver within the meaning of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, can be found where the totality of the circumstances—the attendant facts of the case—implicitly show that the accused voluntarily and intelligently relinquished his *Miranda* rights and made a statement. Thus, in Miller v. State, 251 Md. 362, 247 A.2d 530, the defendant, having been afforded his full *Miranda* warnings, was asked prior to interrogation whether, in view of these warnings, he wanted to make a statement and he replied in the affirmative. The court there found that the accused had waived his *Miranda* rights after careful and deliberate consideration, citing as attendant circumstances the fact that there was no allegation of mistreatment, the accused said he understood the warnings, and the interrogation was undertaken at the accused's own request. In Mullaney v. State, 5 Md.App. 248, 246 A. 2d 291, the accused was given full *Miranda* warnings and asked whether 'having these rights in mind' he wanted to talk to the police, in response to which

the accused 'nodded his head in a yes position.' While the accused did not immediately make a statement, he did so a short time thereafter, and we found an implied waiver of his *Miranda* rights, observing by way of attendant circumstances that the accused indicated understanding of his *Miranda* rights, was twenty years old and a high school graduate, there was no evidence of mistreatment or of impaired intellectual endowments, and the accused had been caught red-handed in the act of committing the crime. See also Brown v. State, Md.App., 252 A.2d 272, September Term, 1968 (filed April 23, 1969); Minor v. State, 6 Md.App. 82, 250 A.2d 113.

"In State v. Kremens, 52 N.J. 303, 245 A.2d 313, the Supreme Court of New Jersey, discussing the requirement of the waiver of *Miranda* rights, held it absurd to believe that that case requires a formal recitation by an individual that 'I do not wish to exercise my right to remain silent; I do not wish to exercise my right to an attorney.' The court there said: (page 317)

" ' * * * Any clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language employed but a combination of that articulation and the surrounding facts and circumstances.'

"Cases tending to this view are now legion." (Citations omitted.)

The *Anderson* opinion continues as to the problem of a policeman's communicating with a suspect of below average wit. The conviction was affirmed.

In Breedlove v. State, 44 Ala.App. 191, 204 So.2d 836, the opinion quotes from a warning used by Alabama Highway Patrolmen:

"He had a right to remain silent, that anything he said could and would be used against him in a court of law and that he had a right to an attorney before making a statement, that attorney may be present any time that he is talked to and if he could not afford an attorney, one would be appointed him before an attempt would be made to interview him."

In Bond v. United States, 10 Cir., 397 F. 2d 162, the opinion contains this observation:

"We do not read Miranda to hold that 'an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow.' "

Finally, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L. Ed.2d 593, require trial judges to predigest confessions before they are fed to jurors. It seems that in this process there must be a greater balancing of probabilities than is expressed in the scintilla rule. Indeed, some courts seem to require conviction beyond a reasonable doubt in the judge's mind that the proffered confession is voluntary. See dissent of Burger, J., in Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627.

This aspect of conceptualism between findings of law apart from findings of fact in some ways is analogous to a reentry of the bosky thicket of Blackburn v. Ala., 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

In the case of instant concern, the only "evidence" against the confession and waiver was the presumption of the confession's being involuntary. The State's evidence on waiver and voluntariness was uncontradicted. Hence, we do not need to quantify the proof.

Accordingly, the judgment below is due to be

Affirmed.