From a conviction of first degree rape and a sentence of life imprisonment, this appeal follows. As grounds for his appeal, the following arguments are made: (1) appellant was erroneously tried under a duplicitous indictment; (2) appellant was unconstitutionally tried by an all white jury; and (3) the trial court erred when it allowed one of the State's witnesses to testify concerning certain statements made by the appellant. For the reasons outlined below, none of these arguments has merit and the cause is due to be affirmed.
Since the appellant does not challenge the sufficiency of the State's evidence, only an outline of the testimony presented at trial will be presented at this point. At trial, the 24-year-old black female victim testified that on June 7, 1983, she, along *Page 1274 
with a girl friend, Cynthia Shaw, went out walking. While they were walking, the appellant and another man, Henry Lewis Swint, drove by and started talking to the two women. Swint, who was driving the car, offered to take the two women home and they got into the car. Instead of taking them home, however, Swint started down a dirt road into a wooded area. When the car stopped, the appellant told the victim that she would have to "give Henry and me some." The victim interpreted this to mean the "sex relationship" and she refused.
The appellant climbed in the back seat of the car and forced himself upon the victim. She testified that he pulled off her clothes; grabbed her by her hair; hit her with his fist; and "busted" her top lip. While the appellant was hitting and choking her, Swint held her down. After the appellant undressed the victim, he "stuck his stuff into" her. The victim testified that after the appellant completed the sex act, he told Swint that "he might as well go ahead because we're in trouble anyway." At this time, Swint got into the back seat of the car and also raped the victim.[1]
When the appellant first indicated that he wanted to have sex with the victim, she refused since "he was my folks." (According to the victim, the appellant is her first cousin. According to the appellant, however, they are second cousins.) After the assaults, the victim convinced her attackers that she would not tell anyone and they took her home. When the victim told her mother what had happened, she took her to the police station, and then to the hospital, where the victim was examined by a physician. On cross-examination, the victim testified that she was not "fighting over no reefer." According to the victim, she was fighting to keep the appellant off of her.
On behalf of the State, Courado Fernandey, M.D., testified that he examined the victim on June 8, 1983. At that time, the victim was crying and agitated. The witness noticed some bruises inside her upper lip, as well as on her neck and upper chest. Several different specimens were taken from the victim to work up a rape "kit" on the victim.
The victim's mother testified that, on the day in question, her daughter returned to her house and arrived in Swint's car. The mother testified that her daughter was crying and acted "real nervous" and afraid. The mother observed that her daughter had scratches around her neck; her mouth was "busted"; and "a bunch of hair was standing up in the back." The victim told her mother that both the appellant and Swint had raped her. After calling the police, they went to the police station and then went to the hospital.
Additional testimony was presented by the State concerning the findings of the rape "kit." At the close of this testimony, the State rested its case and the defense made a motion for judgment of acquittal. After the trial court denied the defense motion, the defense presented its case.
The appellant was called to the stand and testified that on the day in question, he had been drinking all day long and went along with Swint's idea to take the victim and her girl friend to get some beer. After getting the beer, they also purchased a "nickle bag of reefer." During the time they were driving around, they continued to drink liquor and smoke marijuana. At some point, they drove down a dirt road and Swint stopped the car. The appellant stated that Swint and the victim got out of the car and stayed in the woods for five or six minutes.
After Swint and the victim returned to the car, the appellant stated that he got into a fight with the victim when she told him that "there ain't no more reefer." According to the appellant, the victim slapped him first and then he "slapped her back and me and her were scuffling, you know, she on the back seat and I'm on the front and we was scuffling back and forth." The appellant denied that he had any sort *Page 1275 
of sexual contact with either the victim or her girl friend. According to the appellant (who is 47 years old), he is old enough to be the victim's father, since she is only 24 years old. On cross-examination, the State established that the appellant had several prior felony convictions. These included a 1954 conviction of larceny in the state of Georgia; a 1954 conviction of burglary in the state of Georgia; a 1958 conviction of second degree burglary; a 1961 conviction of second degree burglary; a 1970 conviction in Chambers County, Alabama, of first degree burglary; and a 1981 conviction in Chambers County, Alabama, of grand larceny. On the day in question, the witness testified that he had been drinking beer and whiskey "all day." According to the appellant, the injuries which the victim received occurred after he asked her to roll him "another joint" and she hit him.
The appellant's brother, whose name is also James Martin, testified he saw the victim on the day in question and she asked him if he had any "reefer." According to the witness, the victim acted as if she had been drinking and having fun and did not act as if she was trying to escape from the appellant. At this point, the defense rested and renewed its motion for judgment of acquittal, which was denied by the trial court.
The State then called to the stand two rebuttal witnesses. One of these witnesses, Mike Looser, Chief of Police, Lafayette, Alabama, testified that he gave the appellant hisMiranda rights, and informed him that he, as well as Henry Lewis Swint, had been charged with the offense of rape. At that point, the appellant told the witness that he "knew nothing about it whatsoever, that he hadn't even seen Henry Lewis Swint" on the day in question. The witness also testified that he searched the car used by the appellant and Swint but found no marijuana or marijuana seeds in the car.
After the jury retired, it returned with its verdict, and found the appellant guilty as charged in the indictment. At a sentencing hearing, the court, pursuant to the provisions of the Alabama Habitual Felony Offender Act, sentenced the appellant to the "penitentiary of the State of Alabama for the term of his natural life and without parole." From said conviction and sentence this appeal follows.
 I
In the first issue raised on appeal, the appellant argues that he was tried under a duplicitous indictment. According to the appellant, the appropriate rule of criminal procedure would require that "offenses shall not be joined in the same count of an indictment or information." Rule 15.3 (a), Alabama Rules ofCriminal Procedure. According to the appellant, there was a joinder of more than one offense in the indictment in this case, which reads in pertinent part as follows:
 Henry Lewis Swint, alias Henry Swint, and James Curtis Martin, alias `Pap' Martin, did engage in sexual intercourse with [the prosecutrix] . . . by forcible compulsion. . . ."
The appellant admits that, under the Alabama Rules of Criminal Procedure, two or more defendants "may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count." Rule 15.4 (a), AlabamaRules of Criminal Procedure. Appellant contends, however, that, the offenses charged involved separate acts of nonconsensual sexual intercourse by different defendants, and that the joinder of these "separate offenses" in one count of the indictment rendered the indictment duplicitous and subject to dismissal. In support of this position, appellant cites no Alabama cases and simply refers to certain federal court cases applying the Federal Rules of Criminal Procedure.
This issue, however, has been decided against the appellant by virtue of a recent opinion of this court involving appellant's co-defendant, Henry Lewis Swint. This Court, per Presiding Judge Bowen, in Swint v. State, 455 So.2d 285
(Ala.Cr.App. 1984) upheld Swint's conviction of first degree rape and stated as follows: *Page 1276 
 "The indictment charged that `Swint, and James Curtis Martin, . . . did engage in sexual intercourse with . . . [the prosecutrix], a female, by forcible compulsion.' Swint argues that only one rape is charged and two persons cannot be guilty of a single joint rape. Clayton v. State, 244 Ala. 10, 12, 13 So.2d 420 (1942). He also argues that the indictment is duplicitous because it charges two separate offenses.
 "The evidence shows that both Swint and Martin raped the prosecutrix as part of one plan and as part of a single transaction. The joinder of both defendants was proper under Rule 15.4 (a)(ii) and (iii), A.R.Cr.P.Temp., which provides that `(t)wo or more defendants may be charged in the same indictment, . . . (ii) when the several offenses are part of a common conspiracy, scheme, or plan; or (iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other.'" Id. at 286.
Here, as in Swint, supra, the indictment was not duplicitous since joinder of the two defendants was proper. Rule 15.4 (a),Alabama Rules of Criminal Procedure.
 II
The second issue raised on appeal is the argument that the State "purposefully and systematically" excluded blacks from the jury by use of its peremptory strikes. Appellant has failed, however, to meet his burden of proof to show that, in case after case, blacks have been systematically excluded as jurors. Swain v. Alabama, 380 U.S. 202, 223, 85 S.Ct. 824, 837,13 L.Ed.2d 759 (1965); McMorris v. State, 394 So.2d 392
(Ala.Cr.App. 1980), cert. denied, 394 So.2d 404 (Ala. 1981),cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983
(1981). Although appellant admits in his brief that "the existing law in this State may presently be otherwise," he goes on to argue that the law should be changed in order to "effect the full protection of the appellant's constitutional rights." Under Alabama law, however, the systematic exclusion of blacks from the jury in a particular case does not establish that appellant has been unconstitutionally deprived of due process.Carpenter v. State, 404 So.2d 89, 94 (Ala.Cr.App. 1980), writquashed, 404 So.2d 100 (Ala. 1981). Thus, appellant's second argument is also without merit.[2]
 III
The third argument presented by appellant is whether the Court erred when it allowed certain testimony to be presented in the State's rebuttal. According to the appellant, the testimony presented by Police Chief Mike Looser in rebuttal had not been made available to the defense, pursuant to its "omnibus motion" for discovery. In the present case, however, there is nothing in the record to indicate that the motion was brought to the attention of the trial court and that the trial court entered a ruling on the discovery motion. Thus, this issue has not been preserved for review by this court on appeal.
However, even assuming, arguendo, that the trial court entered an order granting the defense motion, it is apparent that the State was unaware of the evidence until the day of trial and thus it would have been impossible to produce the evidence at an earlier time. Thus, there was no error at the trial court level. Stephens v. State, 451 So.2d 402, 405
(Ala.Cr.App. 1984). Additionally, it is apparent that there was no suppression of exculpatory evidence, which has been condemned by the United States Supreme Court in the case ofBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963).
In determining whether the defendant has been prejudiced in those cases where, as in the present case, there has been "delayed disclosure" of certain information, *Page 1277 
the "proper focus is upon the materiality in the nondisclosure or delayed disclosure of exculpatory information in determining the denial vel non of defendant's rights of due process and fair trial." Ex parte Raines, 429 So.2d 1111, 1113-1114 (Ala. 1982), cert. denied, Raines v. Alabama, 460 U.S. 1103,103 S.Ct. 1804, 76 L.Ed.2d 368 (1983). Here, the evidence of the appellant's guilt was overwhelming and, considering the "totality of the circumstances," there is no reasonable doubt concerning the appellant's guilt. Bush v. State, 431 So.2d 555,560 (Ala.Cr.App. 1982), aff'd, Ex parte Bush, 431 So.2d 563
(Ala. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200,78 L.Ed.2d 175 (1983). Thus, there was no error on the part of the trial court, McMullin v. State, 442 So.2d 155 (Ala.Cr.App. 1983).
For the reasons outlined above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Swint's conviction of first degree rape was upheld by this Court on appeal. Swint v. State, 455 So.2d 285 (Ala.Cr.App. 1984).
[2] For an excellent discussion of this issue, reference is made to this court's recent opinion, per Judge Patterson, in the case of Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App. 1985).