Edward Charles Wright was convicted of the offense of possession of burglar's tools in violation of § 13A-7-8, Code of Alabama 1975, and was sentenced to four years' imprisonment in the penitentiary. His probation on a previous offense was revoked and he began serving both sentences concurrently.
The state's evidence shows that about one o'clock in the morning, Appellant Wright was observed by officers of the Montgomery Police Department at the door to Cooper's Lounge. He appeared to be trying to pry the door open with a long, black object. When the officers' car pulled up, he ran. The officers were "assisted" by "two canine units," who found Wright behind an adjacent building. The arresting officers handcuffed Wright and read his constitutional rights to him from a card. The state asserts: "The appellant indicated to Officer Fleming that he understood all his rights." The appellant contends that he never expressly waived his right to remain silent. The record reveals the following:
 "A: That was at the next building. So I ran around there to see what was going on. That's when I saw him on the other side of the fence. We got him over to the other side where I was standing and that's when I handcuffed him and read him his rights.
 "Q: Did the canine officer have him under custody at that point?
 "A: Yes. When I got there he was coming over the fence.
"Q: What did you do next?
 "A: Like I said, I handcuffed him and read him his rights, took him to the vehicle and asked him where the tool was. *Page 702 
 "Q: Did you read him his rights off the standard card?
"A: Yes, I did.
"Q: Do you have that card with you?
"A: No, I sure don't. I left it in my vehicle.
"Q: Is it the standard MPD rights card?
"A: Yes, it is.
 "Q: After you read him his rights and handcuffed him, what did you do?
"A: I took him to the vehicle. To the police vehicle.
"Q: And what did you ask him as you were doing that?
 "A: As I was doing that, I wasn't asking him anything. Like I said, I took him back to the car. Then I asked him where the tool was. And he replied that he was scared, he dropped it somewhere. So I asked him where. He said around the side of the building.
 "MR. ALLEN: I'll object, Your Honor, to proper predicate laid. To properly reading his rights. To waiving his rights.
"THE COURT: Did you read him his rights?
"THE WITNESS: Yes, I did.
 "Q: (By Mr. Pierson) What did he say after you read them?
"A: He didn't say anything.
"* * * *
"VOIR DIRE EXAMINATION
"BY MR. ALLEN
 "Q: After you advised him of his rights, you asked him some questions?
"A: On where was the tool.
"Q: Did he tell you?
"A: Yes.
 "Q: All right. Prior to asking him that question, did you ask him if he wished to waive his rights you had given him?
"A: Yes, I sure did.
"Q: What did he respond?
"A: He didn't respond.
 "MR. ALLEN: We move to exclude any statement he made and the fruits of that statement."
The officers then took the appellant to the police station, where he was again informed of his rights, signed a standard rights form, and signed a statement admitting the act.
On appeal, Wright contends that this case is controlled by the Supreme Court case of Tague v. Louisiana, 444 U.S. 469,100 S.Ct. 652, 62 L.Ed.2d 622 (1980). The state relies on NorthCarolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286
(1979), which was decided the year preceeding the Tague case. The state urges that Tague is distinguishable in that in Tague
there was absolutely no evidence offered to show a knowing and intelligent waiver of the Miranda rights. The Butler case seems to say that no express statement of waiver is necessarily
required. The appellant points out that both the discovery of the tool and the subsequent confession were the fruits of the initial statement made on the scene. He argues that silence plus confession does not equal waiver.
Pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), the state bears the burden of showing that the statement made was made after a knowing and intelligent waiver of the fifth amendment rights of the accused.
While all extra-judicial confessions are prima facie involuntary and can be rendered admissible only by a showing that "an express and affirmative" waiver was given, there is no set pattern or manner for a waiver. Sullivan v. State,351 So.2d 659 (Ala.Cr.App.), cert. denied, 351 So.2d 665 (Ala. 1977); Lloyd v. State, 45 Ala. App. 178, 227 So.2d 809 (1969). A waiver will not be presumed simply from the silence of the accused after the warnings are given or simply from the fact that a confession or admission was obtained.
Where, however, the totality of the circumstances indicates that the confession or admission was voluntary, a confession or admission will not be excluded simply because the accused did not state that he understood his rights or did not sign a written waiver. This is the import of North Carolina v. Butler,supra. In Sullivan v. State, supra, this court stated: *Page 703 
 "Any clear manifestation of a desire to waive is sufficient. The test is a showing of a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language but a combination of that articulation and the surrounding facts and circumstances. Lloyd, 45 Ala. App. at 184, 227 So.2d at 814."
Appellant Wright had two Youthful Offender Act convictions in 1981 and a conviction for burglary and theft following a guilty plea in 1982. We estimate the accused to be no more than 24 years old. This is all that we can glean from the record.
No presentence report nor any other data is available to indicate the ability of the accused to make a knowing and intelligent waiver of his right to remain silent in this case. The record is silent as to facts or findings concerning the accused's intelligence level, educational background, employment experience, past imprisonment, family relationships, and any other matters which would help us determine his ability to knowingly and intelligently waive his right to remain silent. Was he "street-smart"? Was he "con-wise"? We do not know. A review of the totality of circumstances available to us simply shows a deficit of information. What, then, does the law require be inferred from a silent record? The state bears the burden of proof to overcome the prima facie involuntariness of an extra-judicial confession. In cases of a deficit or failure of proof, "a silent record," the party bearing the burden of proof necessarily loses. We are unable to find that the totality-of-the-circumstances test can bring this case within the ambit of North Carolina v. Butler. Therefore, the motion to suppress should have been granted. We reverse and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.