[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 804 
The appellant, Michael L. Gwynne, was found guilty of two charges of attempted extortion in the first degree and was sentenced to 60 years' imprisonment pursuant to Alabama's Habitual Offender Statute.
Officers Tommie Lee Hord and Kathy Pruitt, of the Montgomery Police Department, began an investigation of harassing and obscene phone calls made to Montgomery area residents; approximately 50 telephone harassment cases as well as two attempted extortion cases had been reported. The extortion cases involved a caller requesting money in return for the safe release of the daughter of the person called. Arrangements were subsequently made between the Montgomery Police Department, South Central Bell Telephone Company, and residential phone customers of South Central Bell, whereby "traps" were set on selected telephones to help trace the harassing phone calls being made to these residences. One such trap was placed on the telephone of Mr. Jackson Dismukes, whose child received a call from a man advising her that her mother had been involved in a mishap. This call was traced to a telephone number in the residence of the appellant. While Officers Hord and Pruitt proceeded to the residence of the appellant, Officer Billingsley, of the Montgomery Police Department, placed a call to the appellant's residence pretending to conduct a telephone survey in order to have the appellant identify himself. This conversation was taped and entered into the evidence file.
Officer Richard Foster of the Montgomery Police Department, pursuant to a police radio dispatch, began watching the defendant's house in order to insure that no one left the premises. He accompanied Officers Hord and Pruitt into the appellant's house, whereupon Officer Hord asked the defendant to go to police headquarters. The defendant was allowed to change clothes and call his wife. He was then handcuffed and placed in the police car. On the way to the police station, the appellant was asked if he was an ex-felon, and whether he had his ex-felon card. The appellant replied that he was an ex-felon, but that he had never heard of an ex-felon card.
At police headquarters, Officer Pruitt read the appellant a waiver of rights form, which he refused to sign. Despite the appellant's allegations, Officers Hord and Pruitt testified that at no time did they tell the appellant that he was arrested only for misdemeanors or that he would be allowed to leave. Moreover, Officer Hord testified that she advised the appellant that he was under arrest for making harassing communications and attempted extortion in the first degree. Although the appellant refused to sign the waiver form, he never requested an attorney. The officers received a call from someone asking to speak to the defendant, and the telephone conversation was allowed. The appellant later stated that the caller was an attorney.
The officers then discussed the complaints that they had received and asked the appellant if he remembered anyone he had called. He stated that he could not and asked for a telephone directory in which he could search for names. A search warrant was obtained for the appellant's residence and the warrant was executed. Later the same day, the appellant indicated that he would like to make a statement. He was read his rights again, *Page 805 
executed a waiver of rights form, and then gave a statement which was videotaped, and the audio was subsequently transcribed. The appellant confessed to the commission of the crimes for which he was charged.
The two victims of the extortion calls, Mrs. Webb and Mrs. Capell, listened to the tape of the appellant's voice and positively identified it as that of the caller.
 I
The appellant contends that the trial court was in error because the verdict which was rendered by the jury was neither for the offense charged nor for a lesser included offense. Both of the indictments charged the appellant with attempted extortion in the first degree. The jury verdicts were: "We, the jury, find the defendant guilty as charged (Extortion 1 degree)." Following the foreman's reading of the verdict, the trial court stated, "Mr. Gwynne, you have been found guilty by a jury of your peers in each of these cases of attempted extortion in the first degree, and on the jury's verdict of guilty, I hereby adjudge you guilty of attempted extortion in Case Number 84-606 and 84-607." The appellant voiced no objections thereto. Where the appellant stands mute as to an alleged improper verdict, nothing is presented for review.McCrary v. State, 398 So.2d 752, 756 (Ala.Cr.App.),cert. denied, 398 So.2d 757 (Ala. 1981); Perry v.State, 56 Ala. App. 454, 322 So.2d 745 (Ala.Cr.App. 1975).
Furthermore, in the instant case, the jury found the defendant "guilty as charged," which has repeatedly been held sufficient by the courts of this state. "The jury, by bringing back the general verdict of guilty, in full compliance with the trial judge's instructions, convicted the defendant of the very crime charged in the indictment. Ex parte Clements v.State, 370 So.2d 723 (Ala. 1979)." Johnson v.State, 399 So.2d 859, 865 (Ala.Cr.App.) reversed inpart, Ex parte Johnson, 399 So.2d 873 (Ala. 1979). See also Crowe v. State, 435 So.2d 1371, 1383 (Ala.Cr.App. 1983).
 II
Appellant argues that the evidence presented by the State failed to support a conviction of attempted extortion in the first degree. Specifically, he contends that the State failed to show any specific intent on his part against the alleged victims. To support this argument, appellant indicates that during the alleged conversations, the caller never made any arrangements to receive any property and never said he would call back to make such arrangements. Further, he says, neither of the two children mentioned was in any actual danger and the statements made by the caller that he physically had the children were false.
Under the commentary to Code of Alabama (1975), §§ 13A-8-13 through 13A-8-15, the criminal code extended extortion to areas of conduct theretofore not included, in order to prevent property from being obtained through coercion. If the perpetrator intends to "extort money or other property . . . then he has the requisite specific intent which results in commission of 'blackmail' should he couple [that intent] with a threat to . . . do any injury to any person or to any member of his family or to any property (cf. §13A-8-1(13)a, b, c)." Commentary, Criminal Code of Alabama (1975), §§ 13A-8-13 through 13A-8-15. These sections also include other forms of blackmail from the former § 13-3-3 such as: "(h) Threatening injury to the person or to a member of his family, or property, of anyone with intent to extort or gain from such person any chattel, money or valuable security, or a pecuniary advantage (cf. § 13A-8-1(13)a); and (i) Compelling the person threatened to do any act against his will (cf. § 13A-8-1(13)k)." Commentary, Criminal Code of Alabama (1975), §§ 13A-8-13 through 13A-8-15.
Furthermore, the appellant's contention that he never physically had the children does not prevent the jury from finding him guilty of attempted extortion. All that is necessary for the commission of an attempted felony is "any overt act towards the commission of the offense." §13A-4-2, *Page 806 Code of Alabama (1975). In a crime of attempt " '[i]t is no defense that the offense charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.' " Chaney v. State,417 So.2d 625, 627 (Ala.Cr.App. 1982).
In the present case, the State's evidence shows that the appellant called both Mrs. Webb and Mrs. Capell and threatened harm to their children unless he received money or unless they participated in certain sexual acts with him. This evidence is sufficient to prove appellant's intent to commit extortion.
 III
The appellant contends that his arrest was illegal because there was insufficient probable cause to support his arrest. The appellant bases this argument on two propositions: to arrest on misdemeanor charges, either the offense must take place in the presence of the officer, or the officer must have a warrant and to have properly validated this warrantless arrest the appellant should have acted on probable cause. Both officers testified that the defendant was charged at police headquarters with attempted extortion, which is a felony. Where a law enforcement officer has "reasonable cause" to believe a felony has been committed, he may arrest a person without a warrant. McCants v. State, 459 So.2d 992 (Ala.Cr.App. 1984). "Reasonable cause has been defined by this court inOliver v. State, 385 So.2d 69 (Ala.Cr.App. 1980), as 'knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested to be guilty,' quoting prior cases of our Supreme Court." Harrell v.State, 475 So.2d 650, 652 (Ala.Cr.App. 1985). The present test for determining whether an informant's tip establishes probable cause is the flexible "totality of the circumstances" test of Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause involves 'a practical, common-sense decision whether, given all the circumstances, . . . including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Pugh v. State,493 So.2d 388 (Ala.Cr.App. 1985), quoting Gates,462 U.S. at 238, 103 S.Ct. at 2332. Acting on the information provided by South Central Bell, the officers had probable cause to arrest the appellant.
According to the facts of this case, there were no exigent circumstances sufficient to support the arrest without a warrant. From the time of South Central Bell's tip, the appellant's house was being watched by the police in order to insure that no one left the house. There was no "sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search."Payton v. New York, 445 U.S. 573, 583, 100 S.Ct. 1371,63 L.Ed.2d 639 (1980). This court has interpretedPayton as holding "that, in the absence of exigent circumstances, 'the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.'445 U.S. at 576, 100 S.Ct. at 1374-75." Johnson v. State,453 So.2d 1323, 1325 (Ala.Cr.App. 1984). " 'Payton, did not purport to decide, . . . whether an initial consensual entry would justify a subsequent warrantless arrest.'United States v. White, 660 F.2d 1178, 1182-83 (7th Cir. 1981)." Johnson v. State, supra. " 'Absentconsent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant.' Donovan v. Dewey, 452 U.S. 594, 598 n. 6,101 S.Ct. 2534, 2538 n. 6, 69 L.Ed.2d 262 (1981) (emphasis added [in Johnson]." Johnson v. State, supra.
In the present case the appellant answered the door when the police officers approached his house, and consented to their entry thereof. Thus, as in Johnson, the record fails to show that the appellant's Fourth Amendment rights were *Page 807 
violated by the manner of his arrest. "Although we do not encourage warrantless arrests at the home of the accused, the conduct of the police officers in this case is not that sought to be condemned in Payton." Johnson, at 1325.
 IV
The appellant alleges that his confession was improperly allowed into evidence by the trial court. His claim is based on the idea that his statement was tainted as a "fruit" of his illegal arrest. This first contention is without merit, as we have already determined the validity of the appellant's arrest. However, the appellant also claims that there was no effective waiver made of his rights under Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant initially refused to sign the waiver form and he states that he did not give up his right to an attorney and that he wanted one present. Therefore, he claims that all questioning by the police department should have ceased under Miranda. He further states that when he did in fact give his statement, it was given under the false belief that he was only being charged with misdemeanors, as he claimed he was informed by one of the police officers. The appellant's counsel also indicates that upon calling the police station to inquire as to the appellant's status, he was informed that the appellant would soon be released, as all charges brought against him were only misdemeanors. On the other hand, the officers involved testified that although the defendant at first refused to sign his rights form, he nevertheless made a voluntary and knowing waiver and soon after, in fact, signed the waiver of rights form. Furthermore, both officers testified that they never indicated to the appellant that he would soon be released and did not misinform him of the charges which were being brought against him.
When the evidence concerning the circumstances surrounding the appellant's confession is conflicting, the trial judge must first determine its admissibility; then, the controverted testimony for the defendant goes to the jury on the confession's credibility. "Where the trial court finds, on conflicting evidence, that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.Harris v. State, 420 So.2d 812 (Ala.Cr.App. 1982);Myers v. State, 401 So.2d 288 (Ala.Cr.App. 1981);Balentine v. State, 339 So.2d 1063 (Ala.Cr.App.),cert. denied, 339 So.2d 1070 (Ala. 1976)." Sumpterv. State, 480 So.2d 608 (Ala.Cr.App. 1985). See alsoTice v. State, 386 So.2d 1180 (Ala.Cr.App.), cert.denied, 386 So.2d 1187 (Ala. 1980). "The trial court is to make this determination based upon a consideration of the 'totality of the circumstances.' Blackburn v. Alabama,361 U.S. 199, 206 [80 S.Ct. 274, 279, 4 L.Ed.2d 242] (1960)."Watkins v. State, 495 So.2d 92 (Ala.Cr.App. 1986). "While all extra-judicial confessions are prima facie involuntary and can be rendered admissible only by showing that 'an express and affirmative' waiver was given, there is no set pattern or manner for a waiver. Sullivan v. State,351 So.2d 659 (Ala.Cr.App.), cert. denied, 351 So.2d 665
(Ala. 1977); Lloyd v. State, 45 Ala. App. 178,227 So.2d 809 (1969)." Wright v. State, 489 So.2d 701, 702
(Ala.Cr.App. 1986). In Wright, we said that where totality of the circumstances indicates that the confession or admission was voluntary, it will not be excluded simply because the accused did not sign a written waiver or claims that he wanted an attorney, even though he never actually requested one. We concluded in Wright that "This is the import of North Carolina v. Butler, [441 U.S. 369,99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)]." We also said in Wright, "In Sullivan v. State, 351 So.2d 659 (Ala.Cr.App. 1979), this court stated: 'Any clear manifestation of a desire to waive is sufficient. The test is a showing of a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language, but a combination of that articulation and the surrounding facts and circumstances.' " Wright v.State, supra, at 702-03. Here, the evidence presented, although in conflict, *Page 808 
clearly supports the trial court's decision that the confession was made voluntarily. Todd v. State, 472 So.2d 707,714 (Ala.Cr.App. 1985).
Furthermore, despite the appellant's contention that he was informed that he was being held only for misdemeanors, it is clear from the record that the appellant understood the acts for which he was being held and the nature thereof, as was demonstrated by his request to look at a telephone directory in order to determine whether or not he could recognize any names. In Thomas v. State, 473 So.2d 627, 629 (Ala.Cr.App. 1985), this court held: " 'We have repeatedly held that an accused need not be informed of the precise criminal charges against him before he can effectively waive his rights underMiranda.' "
The appellant argues that the taped telephone conversation between him and Lieutenant Billingsley, in which the appellant identified himself, should have been inadmissible because he had not been informed of his rights under Miranda, and had not waived them. However, it is clear that the safeguards of Miranda apply only to custodial interrogation of a criminal defendant. Harris v. State, 376 So.2d 773
(Ala.Cr.App. 1979), cert. denied, 376 So.2d 778 (Ala. 1979). Furthermore, the State adequately proved the chain of custody of this identification tape made of the appellant's conversation, by showing that Officer Billingsley made the tape and turned it over to Officer Pruitt, who placed it into the evidence file and subsequently brought it to court. The establishment of a chain of custody is necessary to show a reasonable probability that there has been no tampering with the evidence. Bell v. State, 339 So.2d 96
(Ala.Crim.App. 1976). "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain." Sexton v. State, 346 So.2d 1177, 1180
(Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977). "[T]he trial judge should consider the nature of the article and the circumstances surrounding its preservation and custody," and permit its introduction where continuity of possession is "sufficiently established to afford ample assurance of . . . authenticity." Washington v. State,339 So.2d 611, 615 (Ala.Cr.App.), cert. denied,339 So.2d 616 (Ala. 1976).
 V
The appellant alleges that the State withheld materials of which the State had knowledge and which were subject to his motion for discovery of information necessary to receive a fair trial which the trial court had granted in pertinent part. In response to his motion, the trial court granted the appellant discovery of "any and all statements purported to have been made by the accused, whether they be written or oral" and, thus, the appellant contends that the State should have produced the tape recording made by Officer Billingsley of the appellant's voice in the telephone conversation. Hence, the appellant contends that he was prejudiced in preparing his defense by the failure to disclose this tape and that he was further prejudiced when the trial court, over his objection, allowed the tape to be considered by the jury as evidence. The State argues that the defendant's attorney was apprised of the existence of the tape prior to the trial and shortly after the prosecutor himself learned of its existence. Furthermore, the defendant has failed to show any prejudice caused to him by not being allowed discovery of this material. While the record shows that the defense attorney did not receive notice of the tape's existence until the morning of the trial, it also indicates that the prosecutor did not learn of the existence of the tape until the day before the trial.
The discovery by the defendant of a statement made by him is governed under Rule 18.1(a). This rule states: "Upon motion *Page 809 
of the defendant the court shall order the district attorney: (1) to permit the defendant to inspect and copy any written or recorded statements made by the defendant to any law enforcement officer, official, or employee which are within the possession, custody, or control of the State, the existence of which is known to the district attorney; and (2) to disclose the substance of any oral statement made by the defendant before or after arrest to any law enforcement officer, official, or employee which the State intends to offer in evidence at the trial." However, the appellant's contention is that the State "failed to provide him with" these tapes which is clearly not a duty imposed on the State according to Rule 18.1; rather, the State is required to permit the defendant to inspect and copy the statements and to disclose the substance thereof. The record shows, that prior to trial, the State permitted the defense counsel to inspect the tape and disclosed to him the substance thereof. Although we know that the State's compliance with this rule does not appear to be diligent, the appellant has failed to show any prejudice caused to him by late disclosure of the tape. Furthermore, in a similar case, this court has held that even if the trial court "entered an order granting the defense motion, it is apparent that the State was unaware of the evidence until the day of trial and, thus, it would have been impossible to produce the evidence at an earlier time. Thus, there was no error at the trial court level. Stephens v. State, 451 So.2d 402, 405
(Ala.Cr.App. 1984). Additionally, it is apparent that there was no suppression of exculpatory evidence, which has been condemned by the United States Supreme Court in the case ofBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963)." Martin v. State, 482 So.2d 1272,1276 (Ala.Cr.App. 1985).
Furthermore, we find no merit to the appellant's allegations that the South Central Bell tapes should have been inadmissible. At trial, the defense counsel denied the trial court's offer to grant a continuance for him to examine these tapes. This court has held that call-trace information provided by the telephone company is admissible as records kept in the regular course of business. Brooks v. City ofBirmingham, 488 So.2d 19 (Ala.Cr.App. 1986).
 VI
The appellant contends that the trial court improperly sentenced him under the Alabama Habitual Offender Statute, § 13A-5-9, Code of Alabama (1975), in that the trial court erred in considering his prior convictions from a foreign country for purposes of enhancement of his sentence. Further, he contends that the prior convictions were too remote for consideration in the present case. According to Rule 6(b)(3)(iv), Alabama Temp. Rules of Criminal Procedure, "[a]ny conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130(4), Acts of Alabama 1977, p. 812 (§ 13A-1-2(4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980." Thus, as long as the conduct would have constituted a felony in Alabama, the fact that it took place in another jurisdiction does not prohibit its use for purposes of enhancement. See Weeks v.State, 473 So.2d 589 (Ala.Cr.App. 1985); Beaver v.State, 455 So.2d 253 (Ala.Cr.App. 1984); Poole v.State, 445 So.2d 967 (Ala.Cr.App. 1983). Furthermore, as long as there is a State counterpart for a federal crime, the federal offense may be used for purposes of the Habitual Felony Offender Statute. Carter v. State, 420 So.2d 292
(Ala.Cr.App. 1982). "All prior felony convictions may be considered in connection with the Habitual Felony Offender Act, regardless of what their origin may be. Watson v.State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert.denied, 392 So.2d 1280 (Ala. 1981)." Long v.State, 446 So.2d 658, 660 (Ala.Cr.App. 1983).
At trial, the following prior convictions were proven and considered: a 1974 Colorado conviction for rape and pleas of *Page 810 
guilty in Canada for kidnapping and abduction. Another Canadian offense, which the trial court found to constitute a misdemeanor under Alabama law, was not used for enhancement purposes. The "triggering mechanism," according to Thompsonv. State [Ms. 84 Div. 304, September 27, 1985] (Ala. 1985), is "not whether another jurisdiction might have punished the prior offense by imprisonment for more than one year, but whether Alabama considered the prior 'conduct' so blameworthy as to merit more than one year's imprisonment." Thus, "[a] conviction in any other jurisdiction, at any time, for a criminal act punishable in the other jurisdiction by a sentence exceeding one year, . . . is not a 'felony conviction'unless the act 'would have been' punishable under our own criminal laws on or after January 1, 1980, by sentenceexceeding one year." Id. It is clear that the prior offenses committed by the appellant constitute felonies under the laws of Alabama.
There is further no merit to the appellant's allegations of remoteness. "No age limit on convictions which may be used to enhance punishment has been prescribed by the legislature and, therefore, it can only be assumed that none was intended."Long v. State, supra (wherein the court considered a conviction which occurred 13 years previously). "It is equally as settled that convictions occurring prior to the effective date of the Habitual Felony Offender Statute may be used for enhanced punishment purposes. Lidge v. State,419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616
(Ala. 1982)." Gratton v. State, 455 So.2d 189, 191
(Ala.Cr.App. 1984).
AFFIRMED.
All the Judges concur.