Roy Enis Quates was indicted for the murder of Gerald Adkison, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter. Following a habitual offender hearing, the trial judge set sentence at forty years' imprisonment in the penitentiary.
On May 29, 1982 at approximately 11:00 a.m., Lee Horace Gibson saw the appellant at the house of his next door neighbor, Gerald Adkison. Gibson heard the appellant and Gerald's wife, Louise, having an argument. As the appellant was leaving, Louise told the appellant she was going to call the police. He then replied that he intended to wait on her husband to return home.
The appellant soon left but returned to the Adkinsons' home at approximately 3:00 that afternoon. He parked his car in Gibson's yard and asked Gibson to call Gerald. Gibson refused and the appellant yelled, "Come out you dirty coward." (R. 9). When Gerald came out of the house, the appellant told Gibson, "I am going over and beat hell out of him." (R. 9).
Soon after, the two men began fighting in between a truck and a car parked in Gerald's yard. Gibson heard a gunshot. Gerald told Louise to call the police and the appellant said, "Shoot, shoot me again." (R. 11). Gerald replied that he couldn't because his gun would only hold one shell.
The two men began fighting again and Gibson saw the appellant hit Gerald with a jack after he was already lying on the ground. The appellant then threw down the jack, picked up the gun, got in his car and left.
The police and rescue squad arrived shortly thereafter. Gerald was transported to Flowers Hospital in Dothan, where he died on June 2, 1982, from the injuries which he had received.
Bob Breed, an officer with the Enterprise Police Department, went to the appellant's house in an attempt to persuade him to answer some questions at the police station. *Page 201 
The appellant was reluctant to go and asked about swearing out a warrant on Gerald Adkison. The appellant then agreed to go to the station. He had not been arrested at this point, just detained.
On the way to the station, the appellant asked Officer Breed if Gerald was still alive and Breed replied that as far as he knew, Gerald was still alive. The appellant said if they would take him to the hospital, "he would kill the son-of-a-bitch." (R. 83). The appellant was taken to the police station where he was arrested for assault and later for murder.
On June 3, 1982, Bruce DeVane received a statement from the appellant after he had been given his Miranda rights and had waived them. No threats, hope of reward, inducements nor promises were made to the appellant in order to obtain his statement.
The appellant stated he went to the Adkison house at about noon on May 29, 1982, to get some of his property which Louise gave to him.
He returned to their house later that afternoon and discovered Gerald was home. Gerald came out of his house and told the appellant to come over, which he did. Gerald then started pushing the appellant, cursing and arguing and told him he was going to kill him.
Louise got the shotgun and gave it to Gerald. He pointed the gun at the appellant who was trying to push the gun away, when it went off at his feet. In an effort to prevent Gerald from reloading the gun, the appellant picked up a jack and hit Gerald twice on the head before he fell to the ground.
The first defense witness was Louise Adkison. On May 29, 1982, at approximately 4:00 p.m., her husband, Gerald, looked out the window and saw the appellant. He stated he was going to kill the son-of-a-bitch and picked up the shotgun and loaded it. Gerald told her to bring it to him if he needed it. He then put the shotgun beside the door, opened a knife, put it in his pocket and walked out the door.
Once outside, Gerald yelled for the appellant to come over, which he did. Gerald asked Louise for the gun and she brought it to him. He cocked it and pointed it at the appellant who did not have a weapon.
As Louise ran to call the police, she heard a gunshot.
Louise testified that she had earlier lied to the police concerning the events of May 29, because Gerald's brothers had threatened her. She testified that the appellant is her son-in-law, and she does not want to see him go to jail. Louise admitted that Gerald and the appellant had been involved in a previous altercation in which the appellant hit Gerald on the head with a jack and he had to go to the hospital.
 I
The appellant contends the trial court committed reversible error when it failed to charge the jury on the lesser included offense of criminally negligent homicide.
Section 13A-1-9 (b), Code of Alabama 1975 states:
 "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
Section 13A-6-4 (a), Code of Alabama 1975 provides that:
 "A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence."
The definition of "Criminal negligence" provided by the Code is as follows:
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Page 202 
Ala. Code, § 13A-2-2 (4) (1975). (Emphasis added).
Certainly, it cannot be said that the appellant failed to perceive that the deceased's death might result if he was hit on the head with a jack. The ordinary person would be aware that someone who is hit on the head with a heavy object, such as a jack, would sustain serious, if not fatal, injuries.
The appellant's argument that the jury should have been charged on criminally negligent homicide, because he claimed he killed the deceased in self-defense, is without merit. In Dalyv. State, 401 So.2d 274 (Ala.Cr.App. 1981), the defendant claimed he should have been found guilty of criminally negligent homicide, because he had acted in self-defense. In that case, Judge Leigh Clark stated:
 "There would be considerable force to such contention if the section defining criminally negligent homicide, § 13A-6-4, had not been amended prior to its effective date, and prior to the commission of the alleged crime, by expunging therefrom one of the two kinds of criminally negligent homicide therein defined:
 `(a) A person commits the crime of criminally negligent homicide if:
`(1) . . .;
 `(2) He intentionally or recklessly causes the death of another person in the good faith but unreasonable belief that one or more grounds for justification exists under Article 2 of Chapter 3 of this Title.
`. . .
`. . . .'"
"As thus amended, § 13A-6-4 sets forth only one kind of criminally negligent homicide. It states simply, `A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.'"
The commentary to § 13A-6-4, Code of Alabama 1975, also addresses this issue. It states:
 "Section 13A-6-4 originally included the `imperfect defense' doctrine where defendant was not wholly justified or excused in an intentional or reckless killing, but, at the same time, he was partially justified because he caused the death in the good faith but unreasonable belief that he had grounds for justification (self-defense, use of force in making arrest, necessity, duress, etc.) and is excused to the extent that he should not be held 100% liable for murder or manslaughter (voluntary), but liable only for the crime of criminally negligent homicide. The doctrine has never been formalized under Alabama law, except to the extent that sometimes whether defendant acted reasonably or rashly, hastily or without good judgment, becomes a state of mind closer to `negligence' than `malice' or `intentional,' and is placed by the jury in a manslaughter category. The 1979 legislature repealed the `imperfect defense' provision."
A claim of self-defense does not reduce a charge of murder or manslaughter to criminally negligent homicide. The appellant is either guilty of manslaughter or he is innocent of the charge because the killing was justified. The jury chose to believe the former in this case.
Therefore, we do not find any reasonable theory contained in the record which would support a charge to the jury on the lesser included offense of criminally negligent homicide. The trial judge was correct in refusing to give such charge.
 II
The appellant's contention that the Habitual Offender Act is being selectively and discriminately enforced is without merit.
A criminal statute will be found to violate the Equal Protection Clause of the United States Constitution if an accused can demonstrate to the court that similarly situated persons are not being treated equally, and that the discrimination is intentional and is based upon an unjustifiable standard or arbitrary classification. Oyler v.Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). *Page 203 
This appellant attempted to show that one individual who should have been prosecuted as a habitual offender was not treated as such. We do not find this instance to be sufficient to establish that the Habitual Offender Act is being selectively enforced.
First, the appellant offered proof of only one individual who had been treated differently under this statute. Secondly, he offered no evidence that this alleged discrimination was intentional or based on a suspect classification.
Therefore, there is no error shown in this record. For the reasons stated above, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.