The appellant, Robert Lewis Hawkins, Jr., was indicted and convicted for the murder of Anthony Francis Carter. He was sentenced as a habitual offender to life imprisonment. Three issues are raised on appeal.
 I
Hawkins argues that the typewritten transcript of his tape-recorded statement to the investigating officers was improperly admitted over the objections that it violated the best evidence rule and the parol evidence rule.
After his arrest, Hawkins was interrogated and gave an oral statement. This statement was tape-recorded and a written transcript was made from that recording.
Mobile Police Detective Walter Pickett testified that he was present during the entire questioning of Hawkins, that he listened to the recording, that he read the typewritten version, and that the typewritten version truly and accurately reflected what was on the tape recording and what Hawkins said during the interrogation. Pickett testified that the transcript was "the same statement . . . (Hawkins) gave us on the tape the night in question." The trial judge admitted the transcript, finding that "this man listened to the tape and read this transcript, that he was present during the entire questioning of the defendant, and that in his opinion this transcript is substantially what the man said on the day that he was interrogated."
Sergeant Rivers Johnson testified that the actual tape recording was missing and had been misplaced. He stated that on the morning of the trial he spent fifteen or twenty minutes looking in the location where the recording should have been. There was evidence that the tape might have been lost when the homicide squad relocated its offices. *Page 1314 
Here, the State could have proved the contents of Hawkins' statement without the tape recording or the typewritten transcript. Any person who was present and heard the statement could have testified to its content. Gordon v. State,34 Ala. App. 278, 280, 41 So.2d 608, affirmed, 252 Ala. 492,41 So.2d 610 (1949). The unavailability of a tape recording of a confession does not preclude the admission of the oral testimony of a witness to the inculpatory statement. Fleming v.State, 57 Ala. App. 556, 329 So.2d 616 (1976). "If the accused makes an oral confession, and minutes later signs a written confession of somewhat similar content to the oral confession, there are two distinct confessions and neither the best evidence rule nor the parol evidence rule debars the State from proving either or both confessions." C. Gamble, McElroy'sAlabama Evidence, Section 200.19 (3rd ed. 1977).
Hawkins' argument that the tape recording was the best evidence of his statement is without merit. The best evidence rule is applicable only to writings and does not apply to tape recordings. United States v. Conway, 507 F.2d 1047 (5th Cir. 1975); United States v. Duffy, 454 F.2d 809 (5th Cir. 1972); Annot. 58 A.L.R.3d 598, Section 7 (1974). "Although it is sometimes said loosely that a party must produce the best evidence which the nature of the question admits, there is no rule of law that is so all-encompassing." C. Gamble, McElroy'sAlabama Evidence, Section 212.01 (3rd ed. 1977). "Where a tape recording of accused's confession has been made, the best evidence does not require that the recording be produced in court." 23 C.J.S. Criminal Law, Section 833 (e) (1961).
However, once the State attempted to show that the confession was in writing, "then the best evidence rule governed the question of identifying the writing setting forth the confession." Bennefield v. State, 281 Ala. 283, 285,202 So.2d 55 (1967); Gordon v. State, 252 Ala. 492, 493, 41 So.2d 610
(1949); Elkins v. State, 250 Ala. 672, 674, 35 So.2d 693
(1948). Once the State attempted to prove the contents of the confession by the use of the typewritten transcript of the lost tape recording, the best evidence rule became applicable and the authenticity of the transcript became the pivotal question.
Here, defense counsel objected to the admission of the typewritten transcript on the ground that "there's been no testimony by the person that typed this that this is a true and accurate copy." In Bennefield, "the stenographer who took down the questions and answers in shorthand and later prepared the transcription did not testify. She was the only one who could testify to the authenticity of the transcription made from hershorthand notes." Bennefield, 281 Ala. at 285, 202 So.2d 55
(emphasis added). Here, Detective Pickett could and did authenticate the typewritten transcript.
 "Although the defendant maintains that the stenographer who transcribed the tape recording is the only person who could authenticate the transcript, the stenographer could only testify that the transcript accurately reflected what was on the tape recording. Smith, who was present during the interrogation, who listened to the tape recording, and who read the written transcription, could properly testify that the transcript accurately reflected what was contained on the tape and that the tape recording accurately reflected that which was actually said during the interview. Gwin v. State, 425 So.2d 500, 505 (Ala.Crim.App. 1982), cert. quashed, Ex parte Gwin, 425 So.2d 510 (Ala. 1983).
See also Watson v. State, 398 So.2d 320, 326 (Ala.Cr.App. 1980), cert. denied, 398 So.2d 332 (Ala. 1981).
We do not think that Bennefield provided the only way in which a transcript of a confession may be authenticated. A typewritten transcript of a recorded conversation is admissible where the officer who listened to the conversation at the time of the recording testifies that the transcript accurately reflected the conversation. *Page 1315 People v. Ketchel, 59 Cal.2d 503, 30 Cal.Rptr. 538,381 P.2d 394, 401 (1963).
Where the use in evidence of typewritten transcripts of sound recordings has been objected to as in violation of the best evidence rule, the general rule is that the typewritten transcripts have been held admissible in evidence if their accuracy and reliability is clearly established. 29 Am.Jur.2dEvidence, Section 436 (1967); Annot. 58 A.L.R.3d 598 (1974). Since the accuracy and reliability of the transcript was adequately established, we find no error in its admission into evidence.
 II
Contrary to Hawkins' contentions, we find that the State did exercise good faith in attempting to locate the unavailable witness, Bruce Carter, the brother of the deceased. Consequently, Carter's testimony from the preliminary hearing was properly admitted.
There was evidence that Carter "just disappeared" approximately ten months before the trial. His grandmother, with whom he had been living, testified that he telephoned her and said that he was going to start a new life for himself and that he was going to leave town.
Detective Pickett stated that he had "dealt" with the grandmother in an attempt to locate Carter and had "gone out looking for him where he usually hangs — where Ms. Emma said you might could find him and places where he stayed." Pickett did not check with the bonding company that had Carter on bond. There was also evidence that Carter had "jumped bond" and fled to New Orleans.
Under Barber v. Page, 390 U.S. 719, 724-725, 88 S.Ct. 1318,1321-22, 20 L.Ed.2d 255 (1968), "a witness is not `unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Ohio v.Roberts, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597
(1980). "The length to which the prosecution must go to produce a witness . . . is a question of reasonableness." California v.Green, 399 U.S. 149, 189, n. 22, 90 S.Ct. 1930, 1951, n. 22,26 L.Ed.2d 489 (1970). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." Roberts,448 U.S. at 74, 100 S.Ct. at 2543.
The question in this case is the sufficiency of the State's efforts to procure the missing witness's attendance to justify the admission of his former testimony at the preliminary hearing. Generally see Annot. 3 A.L.R.4th 87 (1981). Here, the police knew that Carter had "jumped bond", that he had told his grandmother with whom he had been living and who had been giving him money that he was leaving town, and that Carter could not be located in any of his usual places.
Although it is clear that the State did not do everything that foreseeably could have been done in order to secure Carter's attendance at trial, it is equally clear that the efforts it did make were in good faith and were reasonable.Alexander v. State, 418 So.2d 973, 978 (Ala.Cr.App. 1982). Although Hawkins argues that the State failed to subpoena Carter, the facts of this case suggest that such an effort would have been a useless gesture as the State had no address at which to serve any subpoena. "The law does not require the doing of a futile act." Roberts, 448 U.S. at 74,100 S.Ct. at 2543.
"The sufficiency of the proof of the predicate of unavailability of an absent witness is addressed to the sound discretion of the trial judge." Napier v. State,377 So.2d 1135, 1138 (Ala.Cr.App.), cert. denied, Ex parte Napier,377 So.2d 1138 (Ala. 1979). We find no evidence that the trial judge abused his discretion in this case.
 III
Carter's testimony at the preliminary hearing bore sufficient "indicia of reliability" and "afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement" because of the "accouterments *Page 1316 
of the preliminary hearing itself." Roberts, 488 U.S. at 73,100 S.Ct. at 2542. Hawkins argues that the evidence of Carter's former testimony lacks any such indicia of reliability because the Assistant District Attorney who related Carter's testimony repeatedly stated on cross examination that he could not remember certain details of Carter's testimony although he did recall its substance. "No requirement exists that the exact words be given, where secondary evidence is offered, if such witness is able to give the substance of all that was sworn to by the unavailable witness." Williams v. State, 375 So.2d 1257,1270 (Ala.Cr.App.), cert. denied, Ex parte Williams,375 So.2d 1271 (Ala. 1979). See also Davis v. State, 17 Ala. 354 (1850);Gildersleeve v. Caraway, 10 Ala. 260 (1846). Here, as inWilliams, the assistant district attorney's inability to remember certain details of Carter's testimony would pose a question for the jury as to the weight it would accord his testimony. 375 So.2d at 1270.
 IV
The defendant was informed that the State intended to invoke the Habitual Felony Offender Act at the time of the jury's verdict, seventeen days before the sentencing hearing. This constituted reasonable notice. Holley v. State, 397 So.2d 211
(Ala.Cr.App.), cert. denied, Ex parte Holley, 397 So.2d 217
(Ala. 1981); A.R. Crim.P.Temp. 6 (b)(3)(ii).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.