The appellant was charged with murder in violation of §13A-6-2, Code of Alabama (1975). He was found guilty of manslaughter and sentenced to ten years' imprisonment.
The victim, the appellant's wife, died as a result of a massive blow to her head with a baseball bat which opened her skull and bruised her brain. Although the appellant admitted throwing the baseball bat at his wife with the intention of hitting her, he testified that his wife had previously been looking for her gun under her pillow and was approaching him with a butcher's knife before he hit her. However, no gun or knife was found at the scene of the crime.
 I
The appellant argues that the trial court erred in allowing a transcribed copy of his tape recorded statement into evidence, because, according to the best evidence rule, the tape recording itself should have been admitted despite the fact that it was partially inaudible. Further, he maintains that the recording shows that the appellant failed to voluntarily waive his Miranda rights.
The appellant initially contends that because "approximately half" of his answers were inaudible on the tape, the statement was "highly suspect and prejudicial" and should have been disallowed. However, he also argues that if the trial court was correct in allowing the statement, the tape recording should have been admitted rather than the transcribed statement made from the tape. The appellant maintains that transcribing the tape allowed "additional human error to be made," but fails to allege that any error was in fact made.
 "The following are the most frequently stated elements that must be shown in order to lay a proper foundation for the admission of such recordings:
 "(1) authentication either by the person who made the recording or [a person] who can testify to its accurate reproduction of the relevant sounds,
 "(2) testimony that the recording is without any changes,
 "(3) testimony that the recording has never been out of the possession of the person in charge of same,
 "(4) testimony as to the accuracy of the machine which made the recording, and
"(5) testimony identifying the voices recorded.
 "In deciding upon the admissibility of a sound recording, the appellate courts have set out the following procedural rules that should be followed by the trial courts:
 "1. The trial court should first have the recording played away from the hearing of the jury and allow parties to make objections.
 "2. If the recording contains illegal or irrelevant evidence, it should be rejected unless the illegal or irrelevant portions can be erased from the tape or kept from the jury by stopping and starting the playing instrument.
 "3. If the recording is inaudible in portions likely to contain material statements, the record should be rejected if it is the only evidence as to the statements but that it should be admitted if corroborative of testimony of parties who were present when the recording was made." *Page 878 
C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 123.02.
"The fact that a recording is partially inaudible in those portions likely to contain material statements does not require its exclusion from evidence unless the recording is the only evidence offered as to the statements." Austin v. State,354 So.2d 40, 43 (Ala.Cr.App. 1977), 354 So.2d 40 (Ala. 1978). See also Boulden v. State, 278 Ala. 437, 179 So.2d 20, 33 (1965) (no reversible error in admitting transcriptions of tape recordings, where the trial judge played the tapes outside the presence of the jury and decided that they were sufficiently audible to be played and, further, that the appellant could not have been hurt by the playing of the tapes in light of the testimony of the officer to whom he confessed.) In the case sub judice, the State introduced the testimony of Sergeant Robert Walker, who had taken the appellant's statement and was present during its entirety. He testified to the substance of the appellant's statement and to the accurate depiction of the tape by the transcript. Both the prosecutors and the defense counsel noted, after the tape recording was played outside the presence of the jury, that they could only hear about half of the tape through the microphones in the courtroom. The trial judge admitted the transcript into evidence, stating that he could not detect any difference in the transcript and the tape. The trial judge also stated he could hear the tape "fairly well," but the tape would not adequately transmit over the court speakers. However, the trial court offered to also play the tape for the jury, but the defense counsel refused the offer.
The appellant's argument concerning the best evidence rule has also been decided adversely to the appellant.
 "The best evidence rule is applicable only to writings and does not apply to tape recordings. United States v. Conway, 507 F.2d 1047 (5th Cir. 1975); United States v. Duffy, 454 F.2d 809 (5th Cir. 1972); Annot. 58 A.L.R.3d 598, Section 7 (1974). 'Although it is sometimes said loosely that a party must produce the best evidence which the nature of the question admits, there is no rule of law that is so all encompassing.' C. Gamble, McElroy's Alabama Evidence, Section 212.01 (3rd ed. 1977). 'Where a tape recording of accused's confession has been made, the best evidence does not require that the recording be produced in court.' 23 C.J.S. Criminal Law § 833(e) (1961).
 "However, once the State attempted to show that the confession was in writing, 'then the best evidence rule governed the question of identifying the writing setting forth the confession.' Bennefield v. State, 281 Ala. 283, 285, 202 So.2d 55 (1967); Gordon v. State, 252 Ala. 492, 493, 41 So.2d 610 (1949); Elkins v. State, 250 Ala. 672, 674, 35 So.2d 693 (1948)."
Hawkins v. State, 443 So.2d 1312, 1314 (Ala.Cr.App. 1983). The officer, who was present during the appellant's statement, in the case sub judice, as in Hawkins, could and did authenticate the typewritten transcript by testifying that the transcript accurately reflected the conversation. Id. SeeWatkins v. State, 495 So.2d 92, 97-98 (Ala.Cr.App. 1986), for a discussion of the methods by which the accuracy of a statement transcribed from a tape recording may be established.
This issue was addressed in Kennedy v. State, 472 So.2d 1092,1099-1100 (Ala.Cr.App. 1984), aff'd, 472 So.2d 1106 (Ala. 1985), cert. denied, Kennedy v. Alabama, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985), wherein it was stated:
 " 'The best evidence rule has as its basic justification the prevention of fraud. . . . A second justification for the rule is that oral testimony simply is not as reliable as the written word.' C. Gamble, McElroy's Alabama Evidence, Section 212.02 (3rd ed. 1977). Neither purpose of the rule was violated here.
". . . .
 "Even if the admission of the transcript violated the best evidence rule and constituted error, such error was harmless and did not prejudice [the appellant]. . . . [W]e are convinced that the jury's verdicts, both at the guilt and sentencing *Page 879 
phases of the trial, 'would have been the same had the tape recording been admitted into evidence instead of, or in addition to, the written transcription of that recording.' "
The appellant's argument that where a tape is transcribed, it becomes subject to human error, does not address the transcript's admissibility, but rather the weight that it would be given by the jury. Cf. Donahoo v. State, 505 So.2d 1067
(Ala.Cr.App. 1986) (edited videotape).
The appellant also maintains that the tape recording demonstrated that he did not voluntarily waive hisMiranda rights. The appellant refers to a portion of the tape in which his responses to Sergeant Walker's questions concerning his Miranda rights were inaudible. However, Sergeant Walker testified that the appellant was nodding his head affirmatively when asked if he understood his rights and whether he wished to make a statement. Moreover, the record indicates that at the end of the statement, Sergeant Walker questioned the appellant as follows:
 "Okay, just answer these questions for me. I've got three statements for you, okay? Was this statement made on your own free will.
 "His [the appellant's] answer: On my own free will.
 "And you [Sergeant Walker] asked: 'Did I promise you any reward or hope of reward to make this statement?'
"[Answer: No, you didn't promise me anything.]
 "[Sergeant Walker]: All right, sir. Answer: My right, sir. I don't have to answer. I can be silent if I didn't have any lawyer, well, they would just get one. Question: The court's would appoint you one? Answer: Appoint me one.
"Question: Right, sir. Okay."
Thereafter, the trial court ruled that the statement was made voluntarily. The trial court found:
 "Well, the Court, after listening to it, the totality of it, the Court is of the opinion that it was voluntary because he apparently was very well aware of his rights, even recited his rights very cogently at the very back of the statement and listening to the tone of the tape the manner in which he spoke it appeared to be a willingness to talk and he was advised of his rights and since there was such a willingness to talk and responses he made the Court would determine that this was a voluntary statement and was knowingly given at the time it was given, so I'll overrule your motion to suppress at this time."
The appellant alleges error in that he did not unequivocally answer "yes."
 "While all extra-judicial confessions are prima facie involuntary and can be rendered admissible only by showing that 'an express and affirmative' waiver was given, there is no set pattern or manner for a waiver. Sullivan v. State, 351 So.2d 659 (Ala.Cr.App.), cert. denied, 351 So.2d 665
(Ala. 1977); Lloyd v. State, 45 Ala. App. 178, 227 So.2d 809 (1969). A waiver will not be presumed simply from the silence of the accused after the warnings are given or simply from the fact that a confession or admission was obtained.
 "Where, however, the totality of the circumstances indicates that the confession or admission was voluntary, a confession or admission will not be excluded simply because the accused did not state that he understood his rights or did not sign a written waiver. This is the import of North Carolina v. Butler, [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)]. In Sullivan v. State, supra, this court stated:
 " 'Any clear manifestation of a desire to waive is sufficient. The test is a showing of a knowing intent, not the evidence of a shibboleth. The criterion is not solely the language but a combination of that articulation and the surrounding facts and circumstances. Lloyd v. State, 45 Ala. App. at 184, 227 So.2d at 814.' "
Wright v. State, 489 So.2d 701, 702-03 (Ala.Cr.App. 1986). *Page 880 
Under the totality of the circumstances, the trial court ruled that the appellant's statement was voluntary.
 II
The appellant argues that the trial court erred in refusing his requested jury charge on the lesser included offense of negligent homicide.
According to § 13A-6-4, Code of Alabama (1975), "a person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." Criminal negligence is defined by § 13A-2-2(4) as follows:
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. . . . ."
This court addressed the question in Wiggins v. State,491 So.2d 1046 (Ala.Cr.App. 1986).
 "An instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendant's inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of. Weems v. State, 463 So.2d 170 (Ala. 1984); Phelps v. State, 435 So.2d 158 (Ala.Cr.App. 1983); Model Penal Code and Commentaries, § 210.04, Comment 1. To warrant the giving of such an instruction there must be some evidence that the defendant was not aware of the risk he was creating. Wakefield v. State, 447 So.2d 1325
(Ala.Cr.App. 1983); § 13A-2-2, Code of Alabama
1975."
Wiggins v. State, supra at 1048.
The killing in this case was not accidental. "A killing is not accidental when the act causing death is done intentionally. . . . Any contention that the death was accidental 'ignores the nature of the enterprise that the defendant . . . [was] engaged in.' Sanders v. State,16 Ala. App. 511, 513, 79 So. 504 (1918)." Phelps v. State,435 So.2d 158, 165 (Ala.Cr.App. 1983). Thus, in the opinion of this court, there was no rational basis for a verdict of criminally negligent homicide. See Ball v. State, 489 So.2d 675, 679
(Ala.Cr.App. 1986).
The appellant appears to argue that, because of his claim of self-defense, he was entitled to a charge on criminally negligent homicide, but the cases which he cites deal with the necessity of charging on the lesser included offense of manslaughter. The jury, in the case sub judice, was charged on the lesser included offense of manslaughter and the appellant was convicted on that charge. "The submission to the jury of a charge of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense."Phelps v. State, supra. See also Ball v. State, supra, at 679.
 "If it is the appellant's contention that he was entitled to a charge on criminally negligent homicide because he did not intend to to kill the defendant, but was merely defending himself, his claim is equally without merit. 'A claim of self-defense does not reduce a charge of murder or manslaughter to criminally negligent homicide.' Quates v. State, 439 So.2d 199, 202 (Ala.Cr.App. 1983). 'The "imperfect defense" doctrine which provided that a person committed the offense of criminally negligent homicide if he intentionally or recklessly caused the death of another person in the good faith but unreasonable belief that he had grounds for justification [self-defense] has been rejected by the Alabama Legislature.' Gwin v. State, 425 So.2d 500, 510 (Ala.Cr.App. 1982), citing § 13A-6-4 (Commentary, Code of Alabama
(1975). See also Quates v. State, supra, at 202; Wyllie v. State, 445 So.2d 958, 962 (Ala.Cr.App. 1983)."
Lovell v. State, [Ms. 6 Div. 167, April 14, 1987] (Ala.Cr.App. 1987). The trial court properly refused to charge the jury on the offense of criminally negligent homicide. *Page 881 
 III
The appellant argues that the trial court erred in allowing 24 color photographs into evidence. The photographs in question depicted the position or location of the victim's body, the injuries she suffered, the location of the bat, and the condition of the bedroom in which the victim was killed.
 "As a general rule, photographs are admissible in evidence if they tend to 'prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered,' and their admission is within the sound discretion of the trial judge. Fletcher v. State, 291 Ala. 67, 277 So.2d 882
(1973); Thigpen v. State, 50 Ala. App. 176, 277 So.2d 922 (1973); Hopkins v. State, 429 So.2d 1146
(Ala.Cr.App. 1983). Photographs may be admitted if they tend to shed light on, strengthen, or to illustrate other testimony in the case. Chunn v. State, 339 So.2d 1100 (Ala.Cr.App. 1976); Thornton v. State, 369 So.2d 63 (Ala.Cr.App. 1979)."
Arthur v. State, 472 So.2d 650, 660 (Ala.Cr.App. 1984), reversed on other grounds, 472 So.2d 665 (Ala. 1985).
"The fact that a photo is gruesome and ghastly, if it has some relevancy to the proceeding, is no reason to exclude its admission into evidence, even if the photograph may tend to inflame the jury." Warrick v. State, 460 So.2d 320, 323
(Ala.Cr.App. 1984), and cases cited therein. " 'Photographs depicting the character and location of external wounds on the body of the deceased victim are admissible even if they constitute cumulative evidence based on an undisputed matter.'Hines v. State, 365 So.2d 320, 321 (Ala.Cr.App.), cert. denied,365 So.2d 322 (Ala. 1978)." Lovett v. State, 491 So.2d 1034,1035 (Ala.Cr.App. 1986), cert. denied, 491 So.2d 1039 (Ala. 1986). See also C. Gamble, McElroy's Alabama Evidence § 207.01(2) (3d ed. 1977). Thus, this court has held that photographs of wounds to a deceased victim's head were admissible even where cumulative and relating to an undisputed matter. See Kinder v. State, 515 So.2d 55, (Ala.Cr.App. 1986);Scanland v. State, 473 So.2d 1182 (Ala.Cr.App. 1985), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581, (1985)Harrell v. State, 470 So.2d 1303 (Ala.Cr.App. 1984), affirmed,470 So.2d 1309 (Ala. 1985), cert. denied, 474 U.S. 935,106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Furthermore, the photographs of the interior of the victim's bedroom were properly admitted into evidence. "The photographs were not immaterial but were illustrative of the crime scene and corroborative of the testimony of . . . the first policeman to arrive on the scene. . . . A photograph 'is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description.' 23 C.J.S. Criminal Law § 852(1)(a) (1961)."Harrell v. State, supra at 1307.
 IV
The appellant argues that the trial court erred in sentencing him under § 13A-5-6(a)(5), Code of Alabama (1975), which provides that in felony convictions in which a firearm or deadly weapon was used or attempted to be used, the sentence for a Class B or Class C felony shall not be less than 10 years. Specifically, he contends that the baseball bat used to kill the victim was not a deadly weapon because it was used in self-defense. The appellant's counsel states in his brief that "if the Appellant had been lying in wait, and intentionally used the bat to beat the victim, . . . a bat could be considered a deadly weapon or instrument. But in this case, the circumstances dictate otherwise."
 "A deadly weapon is not necessarily an instrument from which a blow would ordinarily produce death, but one from which, as it was used, death would probably result. The manner of its use and the subject against whom it is wielded, as well as the actual results of its use are to be considered. '. . . [A] deadly weapon is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used.' Williams *Page 882 
[v. State, 251 Ala. 397, 39 So.2d 37 (1948)].
Hall v. State, 348 So.2d 870, 873 (Ala.Cr.App. 1977), cert. denied, 348 So.2d 875 (Ala. 1977), cert. denied, Hall v.Alabama, 434 U.S. 1021, 98 S.Ct. 745, 54 L.Ed.2d 768 (1978). Thus, a bat can clearly be a deadly weapon. Furthermore, intent to take life may be inferred by the jury from the character of the assault, the use of a deadly weapon, and other attendant circumstances. Hall v. State, supra; Bowen v. State,32 Ala. App. 357, 26 So.2d 205 (1946). The appellant's motive for using the bat does not prevent it from constituting a deadly weapon.
Section 13A-1-2(11), Code of Alabama (1975), defines "deadly weapon" as follows:
 "A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles."
In Harris v. State, 398 So.2d 777, 779 (Ala.Cr.App.), cert.denied, 398 So.2d 780 (Ala. 1981), this court held that a club was a deadly weapon as a matter of law. Thus, a baseball bat constitutes such a weapon, and the appellant was properly sentenced under § 13A-5-6(a)(5), Code of Alabama (1975).
 V
The appellant argues that the verdict was contrary to the evidence presented. According to § 13A-6-3, Code of Alabama
(1975),
 "(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under § 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
The appellant was convicted of manslaughter; thus, the defense counsel's argument on appeal that the State failed to prove specific intent "which is a necessary element to prove murder" does not merit discussion. Moreover, the appellant's contention that because he established a defense of self-defense, the verdict was unjustified, is without merit. "[Section]13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense." Shultz v. State, 480 So.2d 73, 76 (Ala.Cr.App. 1985). Furthermore, "the evidence regarding self-defense was conflicting, therefore, it is a matter left to the jury to decide. Ex parte Johnson, 433 So.2d 479 (Ala. 1983), Davis v.State, 450 So.2d 473 (Ala.Cr.App. 1984). Additionally, because the appellant admitted to killing the deceased, whether the killing was justified is likewise a question for the jury to resolve. Davis, supra."
There was sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of manslaughter beyond a reasonable doubt. Wiggins v. State,354 So.2d 340 (Ala.Cr.App. 1978).
AFFIRMED.
All the Judges concur.