In January 1988, the appellant was indicted by a Mobile County grand jury for trafficking in cocaine, in violation of § 20-2-80(2), Code of Alabama (1975). In May 1988, the appellant was convicted in a jury trial of the offense charged, and was sentenced to a term of 7 years' imprisonment and fined $50,000.00.
Evidence offered by the State in its case-in-chief showed the following:
On October 14, 1987, Detective James Long of the Mobile County Sheriff's Department received a message to call Detective Brian Minor of the Narcotics Division of the Los Angeles Police Department. Upon returning this call, Long was advised by Minor that the United Parcel Service (UPS) office in Van Nuys, California, had received a package containing cocaine addressed to a Mr. Fred Brown, 306 B Short Street, in Prichard, Alabama. The return address was in care of Louise Iglehart, at 11318 South Wilmington, in Los Angeles.
Minor explained to Long that the package purported to contain balsa wood had been received from two men acting in a very suspicious manner, and that the package did not appear to be sufficiently strong to protect balsa wood from shipping damage. The UPS employee opened the package, discovering a white powdery substance inside which he believed to be cocaine and contacted his supervisor, Richard Horelocker, who called the police. Minor advised Long that the substance, after being tested, was determined to be cocaine. Minor also advised Detective Long that he had instructed Richard Horelocker to reseal the package and to ship it to the UPS office in Mobile in care of Jack Williams.
Upon receiving the package on October 16, 1987, Jack Williams notified Detective Long. Long obtained a search warrant for the package based on the information provided by Detective Minor, then went to the Mobile UPS office, accompanied by Deputies Enrich and LaManna. Prior to opening the package, Long photographed it. Inside the package was a brown paper sack which contained a partially closed sandwich bag. The bag itself appeared to contain about one ounce of cocaine. Each of the items was photographed by Long as it was removed from the package.
After he opened the sandwich bag, Long transferred most of the cocaine from that bag into an evidence bag, leaving approximately one-half gram of cocaine in the sandwich bag. Long then replaced the cocaine with what appeared to him to be an equal amount of mannitol, a non-controlled substance similar in appearance to cocaine. On cross-examination, Long explained that he made the substitution to prevent the cocaine from getting onto the streets. Long sent the cocaine to the Alabama Department of Forensic Sciences for analysis, and re-wrapped the package containing the *Page 622 
mannitol and cocaine mixture. Long identified the package at trial, and testified that he retained possession of the package until October 20, 1987.
On October 20, 1987, the decision was made by Detective Long and UPS officials to make a "controlled" delivery of the package to the address written on the outside of the package. The delivery was made by Glen Savage, a UPS driver, who was wearing a tape recorder in his shirt pocket. Savage was accompanied by Deputy Emrich, who was wearing a UPS uniform. Upon reaching the address on the package, Emrich gave the package to Savage, who approached the appellant's house with the tape recorder activated. Savage identified himself as a UPS employee, and stated that he had a package for Fred Brown. Although it is unclear whether he verbally identified himself as "Fred Brown" to Savage, the appellant accepted the package, and signed the UPS logbook "F. Brown." Savage identified the appellant in court as being the person accepting the package, and identified the tape recording, which was played before the jury. Savage also identified a transcription of the recording, which was also admitted into evidence at the appellant's trial.
When Savage returned to the delivery truck, Emrich exited from the vehicle and, using a portable radio, notified other law enforcement officers waiting nearby that the appellant had accepted the package and returned to the house. Deputies Emrich, Long, LaManna, and Cayton then converged on the home and secured the premises. The officers advised the appellant and the other occupant of the house, Glen Adams, of theirMiranda rights, but did not place them under arrest at that time. LaManna then left to obtain a search warrant for the house.
A search of the premises was made after a search warrant was obtained, and the package was found unopened in a cabinet under the kitchen sink. The deputies also discovered a set of scales in the attic that contained residue of a white powdery substance, an airline ticket in the appellant's name and dated September 27, 1987, from Los Angeles to Pascagoula, Mississippi, and a boarding pass. Further, on a drawer in the bedroom, Deputy Cayton found a torn piece of an envelope bearing the name "W.V. Driver," beneath which was written "11318." The return address on the package was 11318 South Wilmington, Los Angeles. Also written on the envelope was a telephone number bearing a southern California area code.
Deputy Brenda Nettles of the Mobile County Sheriff's Department, a fingerprint expert with 9 1/2 years' experience, testified at the appellant's trial that on October 20, 1987, she dusted the UPS package for latent fingerprints. Deputy Nettles further testified that she made a positive identification of the appellant's fingerprints on the package.
Sylvia Bryant, a forensic drug chemist with the Alabama Department of Forensic Sciences, likewise testified at the appellant's trial. Ms. Bryant stated that on October 22, 1987, she received from Detective Long an evidence bag containing 83.13 grams of cocaine. This was the original contents of the UPS package. After four quantitative samplings, Ms. Bryant determined that the cocaine was 89 to 90 percent pure.
Ms. Bryant also testified that on October 20, 1987, she received the UPS package from Deputy LaManna, and that the package contained 81.37 grams of a white powder. This was the cocaine and mannitol mixture that Detective Long had substituted for the relatively pure cocaine. Tests performed on the mixture by Ms. Bryant definitely established the presence of cocaine; however, because no quantitative analysis was requested, she was unable to state what percentage of cocaine the mixture contained.
 Issues I. and II.
The appellant first alleges that the evidence offered by the State failed to establish a prima facie violation of §20-2-80(2), Code of Alabama (1975), and that the trial court erred in denying his motion for judgment of acquittal. This argument finds little support in the record of this case. *Page 623 
 "The State's evidence was sufficient to prove appellant's guilt beyond a reasonable doubt. . . . Although the evidence was conflicting in certain instances, any differences of fact were resolved by the jury. It is not the function of this court to re-weigh the evidence. We are to review the evidence presented in the light most favorable to the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975), and not to substitute our judgment for that of the jury, Cumbo v. State, Ala. Cr. App 368 So.2d 871, cert. den., 368 So.2d 877 (Ala. 1979)."
Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App. 1981), writ denied, 402 So.2d 1088 (Ala. 1981).
In Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), this Court held that, in reviewing a conviction based on circumstantial evidence, "[t]he test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." (Citations omitted.)
To establish a prima facie case of trafficking in cocaine, pursuant to § 20-2-80(2)(a), Code of Alabama (1975), the prosecution must show that the appellant knowingly sold, manufactured, delivered, or brought into Alabama, or was knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine. In this Court's opinion, these elements were clearly proved by the evidence offered by the State in its case-in-chief.
The appellant contends that "as a matter of law a cocaine trafficking conviction cannot be based on a 'mixture' concocted by the sheriff's department and which contained only a trace amount of cocaine." This argument, however, must necessarily fail when viewed in conjunction with the plain language of § 20-2-80, Code of Alabama (1975), subsection 2, which states as follows:
 "(2) Any person who knowingly sells, manufactures, delivers or brings into this state, or who is knowingly in actual or constructive possession of 28 grams or more of cocaine or of any mixture containing cocaine, described in section 20-2-25(1), is guilty of a felony, which felony shall be known as 'trafficking in cocaine.' " (Emphasis supplied.)
The appellant attempts to distinguish the case sub judice
from Lyons v. State, 455 So.2d 295 (Ala.Cr.App. 1984), and its progeny, in that the "mixture" involved in the present case was "concocted by the sheriff's department," and contains only a trace of cocaine. However, as we expressly held in Lyons, §20-2-80(2), Code of Alabama (1975), does not require the State to prove that the accused possessed 28 grams or more of pure cocaine. Thus, the testimony of Ms. Bryant that the mixture in the package received by the appellant contained cocaine, when considered together with the other evidence presented by the State, is sufficient to exclude every reasonable hypothesis but that of the appellant's guilt of the charged offense.
 III.
The appellant argues that the trial court erred by admitting into evidence an allegedly inaccurate transcript of the tape recorded conversation between him and the UPS deliveryman, Glen Savage.
The record indicates that, after Glen Savage identified the microcassette tape, on which his conversation with the appellant was recorded, the tape was played in the presence of the jury. At the conclusion of the tape, the prosecutor asked Savage if the recording was true and accurate, and he responded that it was. Savage likewise testified that nothing had been added to, or deleted from, the recording but that the tape apparently failed to pick up a comment by the appellant that he had to put his pants on before he could come outside and claim the package. The prosecutor then handed Savage a transcription of the tape, which was admitted into evidence contemporaneously with the tape. Savage identified the transcription by the dialogue *Page 624 
it contained, and stated that it accurately portrayed what was said in the recording, with one possible exception. Although the appellant is quoted in the transcript as saying "I'm Fred," Savage could not recall whether or not the appellant verbally identified himself as being Fred Brown and this portion of the tape was not audible. The appellant objected to the admission of the transcription on the ground that it did not accurately represent the recorded conversation.
 "Where the use in evidence of typewritten transcripts of sound recordings has been objected to as in violation of the best evidence rule, the general rule is that the typewritten transcripts have been held admissible in evidence if their accuracy and reliability is clearly established. 29 Am.Jur.2d Evidence, Section 436 (1967); Annot. 58 A.L.R.3d 598 (1974). Since the accuracy and reliability of the transcript was adequately established, we find no error in its admission into evidence."
Hawkins v. State, 443 So.2d 1312, 1315 (Ala.Cr.App. 1983).
In the instant case, the testimony of Glen Savage established that the transcription accurately reflected the substance of the conversation contained in the recording. Thus, the transcription was properly admitted into evidence under the rule of law in Hawkins, supra. Moreover, the appellant's argument that the transcription was not a verbatim reproduction of a partially audible tape does not address the admissibility of the transcription, but rather the weight it would be given by the jury. See, Hill v. State, 516 So.2d 876, 879
(Ala.Cr.App. 1987).
This Court fails to see any manner in which the appellant was prejudiced by the admission of the transcription, which was seen only by Savage, and not by the jury. This is especially true, inasmuch as other evidence indicated that the appellant signed the UPS logbook as "F. Brown."
 IV.
The appellant, a black male, argues that the trial erred to reversal in denying his motion made pursuant to Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We note, however, that the appellant's Batson motion was not made until after the jury had been sworn and both sides had made their opening arguments. The appellant's motion was therefore not timely made, and this issue is not preserved for our review. Williams v. State, 530 So.2d 881 (Ala.Cr.App. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1159, 103 L.Ed.2d 218
(1989).
 V.
The appellant next alleges that the trial court erred by refusing to permit him to examine a juror who allegedly failed to disclose dealings between himself and defense counsel's law firm, or in the alternative, to grant his motion for a new trial. The appellant contends that error was committed when Dory Painter, a claims adjuster for an insurance company which counsel for the defense had sued, failed to respond to the following question on voir dire:
 "MR. SOTO: Getting back to me, have Arthur Madden or Dom Soto or anybody connected with Madden and Soto taken any interest adverse to you or have we sued you, have we forced you to do something you didn't like, or anything like that?"
(No response).
After the jury had been struck, but before it was sworn, appellant's counsel sought the court's permission to ask Mr. Painter additional questions. At this time, the following exchange occurred:
 "MR. SOTO: Your Honor, before you excuse the jury, can I take up a matter with the Court? I just realized something.
"THE COURT: You need the venire here to do that?
 "MR. SOTO: Well, actually it's Mr. Painter. I didn't realize he's an adjuster for Allstate Insurance. I need to ask him more about that.
"THE COURT: No, sir.
"MR. SOTO: All right. *Page 625 
"THE COURT: I'm not going to reopen the voir dire.
(Jurors sworn.)"
At the conclusion of the Batson hearing, counsel again brought this matter to the trial court's attention:
 "MR. SOTO: I just want to explain to the Court the issue came up in regard to Mr. Painter. I didn't recognize the name. I asked the jurors if we had represented any interest adverse to theirs and no one responded. Mr. Painter, as he was going up, I noticed he's an Allstate insurance adjuster. I've been involved in cases where Allstate has paid. Now, it may be that the juror is or isn't going to be able to overcome that. But based on that that I called the Court's attention to asking further questions and the Court denied my motion. And I'll object to that.
"THE COURT: Anything else?
"MR. SOTO: Yes, sir. And —
 "THE COURT: That motion is denied as to Mr. Painter who's been selected — who's a member of the petit jury in this case."
This Court recognizes that "parties have a right to have questions answered truthfully by prospective jurors to enable wise and informed exercise of their peremptory strikes and that when jurors fail to answer questions correctly, the parties are denied the exercise of that right." Parish v. State,480 So.2d 29, 30 (Ala.Cr.App. 1985). However, "[u]nless a juror is asked a question which applies to him in a manner demanding response, it is permissible for a juror to remain silent; the juror is under no duty to disclose. Thomas v. State, 338 So.2d 1045
(Ala.Cr.App. 1976); Flurry v. State, 52 Ala. App. 64,289 So.2d 632 (1973), cert. denied, 292 Ala. 720, 289 So.2d 644 (1974)."Id. (footnote omitted).
In the present case, we do not believe that the question asked by appellant's counsel on voir dire was sufficiently specific to have put Mr. Painter on notice that he was required to respond to it. As phrased, the question clearly asks whether any of the venirepersons had been sued personally by counsel's law firm; it does not ask whether their employers had ever been sued by the firm. As Painter was under no duty to respond to the question as it was asked, the trial court did not err by refusing to allow the appellant to further examine him on voir dire or to grant appellant's motion for a new trial.Id.
 VI.
Finally, although the appellant contends that the prosecutor's remarks to the jury made in closing argument were prejudicial and denied him the right to a fair trial, he cites no authority in support of his argument. In Vinzant v. State,462 So.2d 1037, 1039 (Ala.Cr.App. 1984), this Court held that "[a]rguments not based on any legal authority have the same effect as if no argument had been made, and the argument will be deemed waived." See also, Johnson v. State, 500 So.2d 494
(Ala.Cr.App. 1986). Thus, this issue is not properly before us.
For the foregoing reasons, the judgment of the trial court is correct and is due to be affirmed.
AFFIRMED.
All Judges concur except BOWEN, J., concurring in result only.