In April 1993, Anthony Battle, the appellant, was convicted of attempted assault in the first degree (CC-92-1161), assault in the first degree (CC-92-1163), and robbery in the first degree (CC-92-1164). He was sentenced as a habitual felony offender to life *Page 345 
imprisonment for each of the assault convictions and to imprisonment for life without parole for the robbery conviction. There was no direct appeal. However, in October 1993, the appellant was granted an "out-of-time" appeal in response to his petition for post-conviction relief. Three issues are presented on this appeal from his convictions.
 I
We reject the appellant's argument that his statement to the police was "without understanding (certainly not full awareness) [and was] generated through intimidation and fear and should have been inadmissible." Appellant's brief at 14.
The crimes were committed on September 24, 1991. The appellant was arrested by officers of the Mountain Brook Police Department at his place of employment, the Mountain Brook Inn on the afternoon of October 21, 1991, at "3:45 to 4:00, somewhere in that neighborhood." R. 40. Approximately 30 to 40 minutes later, Leeds Police Chief Charles Anthony (Tony) Hudson and his partner, Detective Donnie Womble, interviewed the appellant in counsel chambers at the Fultondale City Police Department. Chief Hudson informed the appellant of his constitutional rights and the appellant signed a printed waiver of rights form, which the appellant dated "10-21-91. 4:57 p.m." R. 23. The State presented prima facie evidence that the appellant made a knowing, intelligent, and voluntary waiver of his constitutional rights.
From the time of his arrest and throughout his interrogation the appellant remained handcuffed, was not offered any food or water, and was not offered the use of the telephone. R. 40.
The appellant was questioned by Hudson and Womble about robberies that had been committed in Alabaster, Fultondale, and Leeds. Initially, the appellant maintained his innocence. However, he did admit his participation after Hudson "made him aware that the other suspects in the case had been arrested and had confessed and implicated him in the robberies." R. 28. At that time, three other suspects had been arrested and had in fact given individual statements implicating the appellant.
Chief Hudson testified that during the interview, Leeds police detective Mike Bates "walked up to the counsel chamber's doors. He motioned for Womble to step outside. Womble stepped outside and talked with him. Womble came back inside and said that Mr. Lewis [one of the other suspects] had confessed and implicated Mr. Battle." R. 38-39. The conversation between Bates and Womble did not occur in the presence of the appellant.
The appellant was questioned for approximately 45 minutes before Hudson took a taped statement from the appellant. The tape was transcribed and Hudson made corrections to the secretary's transcript.
Chief Hudson was the only witness to testify at the hearing on the admissibility of the appellant's statement; there was no evidence to contradict or dispute his testimony.
The facts that the appellant was handcuffed, was not given anything to eat or drink, and did not make a telephone call, while factors to consider in the totality of the circumstances, did not render the appellant's confession involuntary. Bush v.State, 523 So.2d 538, 554-55 (Ala.Cr.App. 1988). See alsoFranklin v. State, 28 Ala. 9, 12 (1856) ("[c]onfessions of guilt, voluntarily made by a person, are admissible evidence against him, although they were made after he was arrested, and whilst his hands were tied with a rope and his feet with a bridle"). There is no evidence that the appellant was actually deprived of or denied any food, liquid, or telephone.
In this case, there were no "subtle forms of psychological manipulation, such as trickery or deception" employed by the police to obtain the appellant's confession. See Ex parte Hill,557 So.2d 838, 841 (Ala. 1989); Prince v. State, 584 So.2d 889,894-95 (Ala.Cr.App. 1991), cert. denied, 502 U.S. 1032,112 S.Ct. 873, 116 L.Ed.2d 778 (1992). "Clearly there is nothing improper with confronting the suspect with the actual evidence against him." 1 W. LaFave J. Israel, Criminal Procedure § 6.2 at 447 (1984). *Page 346 
" ' "The test for the voluntary nature of an extrajudicial confession or inculpatory statement is whether in light of all the surrounding circumstances, the statement was free from inducement, threat or promise, either expressed or implied, which would have produced in the mind of the accused any fear of harm or hope of favor." ' " Dixon v. State, 588 So.2d 903,907 (Ala. 1991). Review convinces this Court that the trial court properly admitted the appellant's statement into evidence.
 II
The appellant contends that the trial court erred in failing to suppress his in-court identification by witness Terry Cleveland.
Cleveland testified that on September 24, 1991, he was employed at a Majik Market convenience store in Fultondale. He stated that on that date four black males robbed him and another store clerk. He identified the appellant as one of the four men that committed the robbery and stated that the appellant and the other men had come in the store several times that day before the robbery. The appellant claims that Cleveland's identification was improper because Cleveland had been unable to identify the appellant at a pretrial lineup.
 "While the quality of the victim's description of her assailant and her failure to identify him at the preliminary hearing do warrant cause for concern, these factors go to the weight and credibility of the victim's identification rather than its admissibility. '(A) witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine.' [United States v. Briggs, 700 F.2d 408, 413 (7th Cir.), cert. denied, 462 U.S. 1110, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983)]."
Johnson v. State, 453 So.2d 1323, 1328 (Ala.Cr.App. 1984). See also Thornton v. State, 513 So.2d 83, 86 (Ala.Cr.App. 1987).
There is no evidence of any impermissibly suggestive pretrial identification procedure. We agree with the trial judge that Cleveland's failure to identify the appellant at a pretrial lineup was "a subject you can cross-examine the witness on, and attack his credibility." R. 56. The appellant's motion to suppress his in-court identification was properly denied.
 III
The appellant contends that the trial court committed reversible error by allowing into evidence the typewritten transcript of his tape-recorded statement. He contends that the admission of the transcript violated the best evidence rule and that the transcript is not accurate and reliable.
 "At the outset, we note that '[a]lthough it is sometimes said loosely that a party must produce the best evidence which the nature of the question admits, there is no rule of law that is so all-encompassing.' C. Gamble, McElroy's Alabama Evidence § 212.01 (4th ed. 1991). Moreover, we have held that a typewritten transcript is admissible if its 'accuracy and reliability is clearly established,' even where the transcript 'has been objected to as in violation of the best evidence rule.' Clark v. State, 562 So.2d 620, 624
(Ala.Cr.App. 1989); Hawkins v. State, 443 So.2d 1312, 1315 (Ala.Cr.App. 1983). Where the tape-recorded statement or conversation is missing or unavailable, '[a] typewritten transcript of [the recording] is admissible where the officer who listened to the conversation at the time of the recording testifies that the transcript accurately reflect[s] the conversation.' Hawkins, 443 So.2d at 1314-15. We have also permitted the admission of a transcript where the tape recording was inaudible in places. Thornton v. State, 570 So.2d 762
(Ala.Cr.App. 1990); Hill v. State, 516 So.2d 876
(Ala.Cr.App. 1987); Dawkins v. State, 455 So.2d 220
(Ala.Cr.App. 1984).
 "Although the tape recording in the present case was neither unavailable nor inaudible, we see no reason why a different rule should apply. Lieutenant Scogin was in a position to establish the reliability and accuracy of the transcript, see Gwin v. State, 425 So.2d 500, 505 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983), and did so. Furthermore, the transcript was merely cumulative evidence, the admission of which rests within the discretion *Page 347 
of the trial court. White v. State, 587 So.2d 1218, 1228 (Ala.Cr.App. 1990), affirmed, 587 So.2d 1236
(Ala. 1991); Gainer v. State, 553 So.2d 673, 684
(Ala.Cr.App. 1989). Consequently, the transcript was properly admitted for the limited purposes advanced by the prosecution."
Jackson v. State, 594 So.2d 1289, 1297 (Ala.Cr.App. 1991) (footnote omitted).
We do not find the transcript objectionable because Chief Hudson "corrected" the typewritten transcript so that it more accurately reflected the appellant's interrogation. In fact, in order to lay a proper predicate for the admission of the transcript and the tape recording, the prosecution had to establish that the transcript and the tape accurately and reliably represented the actual event recorded. Neither do we find it objectionable because the transcript indicates that the appellant "nodded yes" in response to a question, even though the "nodded yes" indication it not contained on the tape recording itself.
Chief Hudson testified that he recorded the appellant's statement, that he subsequently listened to the tape, that the tape "seem[ed] to have recorded the conversation just as it occurred" (R. 31); that the tape recording was accurate (R. 190); that he reviewed the transcript and compared it to the tape recording; and that he made corrections on the secretary's transcript, as stated by the prosecutor, "in order to correct the transcript to read properly according to the tape and according to the conversation he had with the appellant" (R. 45); and that he "corrected" the transcript to reflect the appellant's nonverbal answers to his questions (R. 191). The prosecution adequately satisfied the "reliable representation standard" in establishing the predicate for the admission of the tape recording and the transcript. See Ex parte Fuller,620 So.2d 675, 678 (Ala. 1993).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.